HENRY R. JACKSON,

*vs.*

EDWARD F. RICHARDS and LILLIAN F. RICHARDS.

*New Castle, August 7, 1942.*

*Samuel Handloff,* for complainant.
*William H. Foulk,* for respondents.

THE CHANCELLOR: This is a bill to enjoin the defendants from continuing to erect a pasteurizing and milk bottling plant on land owned by them in the Town of Newark, and to compel them to demolish any part of the structure so erected by them prior to the filing of the bill.

The complainant also owned a lot in the Town of Newark, which was conveyed to him by Samuel J. Wright and wife by deed dated April 22nd, 1926, and on which he subsequently erected a dwelling house. The lot so conveyed composed a part of a larger tract of land owned by Mr. Wright, which he had plotted and divided into twenty-seven building lots. The plot was recorded in the office of the Recorder of Deeds, in and for New Castle County, and was labeled "Central Building Sites." Apparently no other material notations appear on it. The complainant's deed and the deeds from Mr. Wright to two other persons for lots in the same tract, also dated April 22nd, 1926, contained the following restrictive covenant:

"That no public garage, store, factory, ware-house, machine shop, blacksmith shop, stable or other buildings for offensive occupation, trade, calling or business which may in any wise be dangerous, noxious, or offensive to the neighboring inhabitants shall be placed or maintained thereon, nor shall the premises or any part thereof be used for any of the above named purposes, that any private garage or other outbuildings shall be erected directly in the rear of said lot and shall be all under one roof."

Apparently, no other lots were sold by the said Samuel J. Wright during his lifetime.

The bill also alleged:

1. That the complainant purchased his lot "upon the representation of the said Samuel J. Wright as to the residential character of the tract and the restrictive covenants imposed upon said lot"; and "relied upon the said restrictions and made the purchase in the belief that the same would be observed."

2. That "the said restrictions were part of a general

scheme or plan on the part of the said Samuel J. Wright to subject the several lots of the tract to the operation of uniform restrictions."

3. That "the said restrictions were intended for the benefit of your complainant, and of the subsequent purchasers of the other lots in the said tract, and that each purchaser was to have the benefit of such restrictions."

4. That the defendants' deed contained no restrictive covenant, but they resided in the Town of Newark, and "had notice of the existence of the aforesaid restrictions prior to their purchase of the said lands and premises."

Samuel J. Wright died on the eighteenth day of September, 1926, seized of the remaining lots in the tract of land so divided by him, and of which the lots subsequently purchased by the defendants composed a part.

On February 20th, 1928, pursuant to the power of sale contained in his last will and testament, Mr. Wright's executors and trustees conveyed all of the remaining lots in the same parcel of land to Mary Eliza Wright and Elizabeth Kelly Proud, who on the same day conveyed the same lands to his sons, John Pilling Wright, Norris N. Wright and Ernest B. Wright, individually. Ernest B. Wright died on the sixteenth day of November, 1934, seized of an undivided one-third interest in the said lands, and, in and by his last will and testament, "did appoint" the Wilmington Trust Company trustee of his estate. A petition in partition was subsequently filed, and the freeholders appointed in that proceeding allotted to the Wilmington Trust Company, as trustee under the last will and testament of Ernest B. Wright, deceased, the remaining lots in the tract, of which the land of the complainant was originally a part. The Orphans' Court approved and confirmed that allotment. The Wilmington Trust Company, as trustee, subsequently conveyed the three lots in that tract to the defendants, Edward F. Richards and Lillian F. Richards, his wife. On the

19th day of December, 1941, they began the erection thereon of the pasteurizing and milk bottling plant, complained of. Jackson claimed that the construction of a plant of that nature on the defendants' lots would violate his contract rights, and would greatly depreciate the value of other lots in the same tract, including his lot, and, on December 26th of that year, he filed his bill.

The defendants claim that the only well pleaded allegations of the bill, admitted by the demurrer (see *Ross v. Freeman,* 21 *Del. Ch.* 44, 180 *A.* 527), are that Samuel J. Wright divided a tract of land, owned by him, into twenty-seven building lots, and recorded the plot; that three of these lots were sold to various individuals, one of whom was the complainant, by deeds dated April 22nd, 1926; that these deeds contained the restrictive covenant set out in the bill, and that on September 29th, 1941, or some fifteen years later, they purchased three lots without any restrictive covenant in their deed. They contend that the complainant, in seeking to enjoin them from the contemplated use of their land, is requesting this court, not only to rewrite his deed, but likewise to rewrite, and add to, their deed. They claim that the complainant would have his deed reformed so as to add to the restrictive covenant appearing therein, substantially the following provision: "And said restrictions shall be for the benefit of all the remaining lots in said tract, and the grantor hereby covenants to include the same restrictions in the deeds to all lots subject thereto"; all of which defendants claim would violate the parol evidence rule. *Gibney, et al., v. Stockdale Corp.,* 20 *Del. Ch.* 272, 174 *A.* 117; *Werner v. Graham,* 181 *Cal.* 174, 183 *P.* 945. The defendants contend that whatever Mr. Wright's original intent may have been, it is clear that he did not establish a general plan, pursuant to which all lots were to be sold (*Werner v. Graham, supra*) ; and that the sale of three lots, subject to the same covenants, could not and would not establish any such plan.

If the latter were the only fact to be considered, that might be true. But the demurrer admits three material facts:

(1) That the complainant purchased his lot "upon the representation" of Samuel J. Wright "as to the residential character of the tract and the restrictive covenants imposed upon said lot."

(2) That "the said restrictions" imposed upon complainant's lot "were a part of a general scheme or plan" of Mr. Wright "to subject the several lots of the tract to the operation of uniform restrictions."

(3) That the defendants "had notice of the existence of the aforesaid restrictions prior to their purchase" of the lots now owned by them.

When these allegations are read together, the only fair inference is that the complainant purchased his lot on the representation of Mr. Wright that the same restrictive covenant, inserted in his deed, would be inserted in the deeds for all other lots sold in the same tract, and that the defendants had notice of that agreement prior to their purchase. Whether "the said restrictions were intended for the benefit" of the complainant and of "subsequent purchasers of the other lots in the said tract," though alleged, is, however, a question of law, and is for the court to determine. See 2 *Tiffany on Real Property*, (*2nd Ed.*) 1438. Obviously, Jackson does not rely on an express covenant by Samuel J. Wright to sell the remainder of the lots in the tract, plotted by him, on the same terms and subject to the same restrictive covenant, on which his purchase was made. See *McComb v. Hanly, et al.*, 128 *N. J. Eq.* 316, 16 *A.* 2d 74; *Id., N. J. Err. & App.*, 26 *A.* 2d 891; 21 *Am. St. Rep.* 488, *note*. He relies on a contract to the same effect; but on a contract which is implied from the circumstances, including pertinent representations made by Mr. Wright prior to his purchase. *McComb v. Hanly, et al., supra;* 4 *Pom. Eq. Jur.*, (*5th Ed.*) § 1294; 2 *Tiff. on Real Property*, (*2d Ed.*) § 1425.

In most cases, where an owner of a tract of land lays it out in building lots, makes a plot showing a general building scheme, and sells to various purchasers in accordance therewith, inserting the same or similar covenants in all the deeds, it seems that an intent to benefit all the land in the tract and to induce purchases thereby may be inferred. *McComb v. Hanly, et al., supra; De Gray. v. Monmouth Beach Clubhouse,* 50 *N. J. Eq.* 329, 24 *A.* 388; 5 *Pom. Eq. Jur.,* 1 *Eq. Rem. (3rd Ed.)* §§ 272, *note,* 275; 4 *Pom. Eq. Jur., (5th Ed.)* § 1295; see, also, *Elliston v. Reacher,* [1908] 2 *Ch.* 374. Under such circumstances, the theory is that reciprocal rights are intended to be given. Accordingly, one grantee may usually enjoin a breach of such restrictions by another, or by one who takes with notice. *Korn v. Campbell,* 192 *N. Y.* 490, 85 *N. E.* 687, 37 *L. R. A.,* (*N. S.*) 1, 127 *Am. St. Rep.* 925; *De Gray v. Monmouth Beach Clubhouse, supra;* 5 *Pom. Eq. Jur.,* 1 *Eq. Rem. (3rd Ed.)* § 275; 2 *Tiff. on Real Property, (2d Ed.)* 1446; 37 *L. R. A.* (*N. S.*) 27, *et. seq., note.* Whether, however, there was such a general and uniform plan of sale, pursuant to which the complainant's lot was sold, is ordinarily a question of fact to be determined from the circumstances. But when questions of that nature arise, the fact that similar restrictions are inserted in all of the deeds is usually strong evidence of the grantor's intent. 5 *Pom. Eq. Jur.,* 1 *Eq. Rem. (3rd Ed.)* 276. Moreover, the right of a complainant to rely on an implied contract, in the nature of a covenant regulating the terms under which the remainder of the tract is to be sold, is not necessarily confined to the precise facts above stated. If a person buys a lot composing a part of a larger tract of land, which has been plotted and divided into building lots, subject to certain covenants restricting its use, and on the representation of the owner and developer that the remainder of the tract will be sold subject to the same restrictions, he may also acquire equitable rights affecting his lot, the violation of which by a subsequent purchaser with notice may be en-

joined. *McComb v. Hanly, et al., supra; La Fetra v. Beveridge,* 124 *N. J. Eq.* 24, 199 *A.* 70; *Tallmadge v. East River Bank,* 26 *N. Y.* 105; *Tulk v. Moxhay,* 2 *Phill. Ch.* 774, 41 *Eng. Rep.* 1142; *Lewis v. Gollner,* 129 *N. Y.* 227, 29 *N. E.* 81, 26 *Am. St. Rep.* 516; 4 *Pom. Eq. Jur.,* (5th Ed.) §§ 1294, 1295.

In *McComb v. Hanly, et al., supra,* the New Jersey Appellate Court (26 *A.* 2d 891, 892) said:

"There are various ways by which a neighborhood scheme may be created in the development and sale of real estate, the most complete way being by a reciprocal covenant whereby the grantor covenants to insert like covenants in all deeds out of the common development; or, by selling them upon representations to the individual purchasers that like covenants will be inserted in the seller's deeds to others, for the common benefit; or, where the seller pursues a course of conduct indicating a neighborhood scheme, leading the several purchasers to assume its adoption and the adherence of all owners to it by such conduct."

In this case, the complainant necessarily relies on the second rule above referred to. The true basis of the doctrine invoked by him seems to be the familiar equitable principle that a purchaser acquires property subject to those equities of which he has notice. As Lord Cottenham pointed out in *Tulk v. Moxhay, supra:*

"The question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased."

He also said:

"For if an equity is attached to the property of the owner, no one· purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

In that case, there was an express restrictive covenant in the deed to the defendant's grantor; here, an implied contract, at least in part for the benefit of the complainant's lot, is relied on. *Tulk v. Moxhay* was, apparently, decided on the theory of unjust enrichment if the defendant's land

were sold clear of the restrictive covenant, by which it was burdened by his grantor.

No real material notations on the plot are relied on, and perhaps the real ultimate question may be whether the complainant's alleged equitable rights are purely of a contractual nature; or whether they are in the nature of an easement in the remainder of the tract, though purely of a negative character. In principle, it seems that each of these theories is subject to some technical objections. See *Bristol v. Woodward*, 251 *N. Y.* 275, 167 *N. E.* 441; 2 *Tiff. on Real Property*, (*2d Ed.*) 1431-1437. If the first rule applies the statute of frauds (§3106 *Rev. Code* 1935), though relied on by defendants, is not applicable, and the representations made by Mr. Wright, even if merely oral, might justify a decree for the complainant. *Tallmadge v. East River Bank, supra; Lewis v. Gollner, supra; Johnson v. Mt. Baker, etc., Church*, 113 *Wash.* 458, 194 *P.* 536; *Hall v. Solomon*, 61 *Conn.* 476, 23 *A.* 876, 29 *Am. St. Rep.* 218; *McComb v. Hanly, et al., supra;* 2 *Tiff. Real Property,* (*2d Ed*) 1431. The theory seems to be that a decree, granting injunctive relief against a purchaser, with notice, is somewhat analogous to a decree for the specific performance of a contract made with the original vendor. 2 *Tiff. Real Property*, 1437, *supra.*

If the alleged rights of the complainant in the remaining lots are in the nature of an equitable easement (*Sprague v. Kimball*, 213 *Mass.* 380, 100 *N. E.* 622, 45 *L. R. A.* (*N. S.*) 962, *Ann. Cas.* 1914*A*, 431; *Ham v. Massasoit Real Est. Co.*, 42 *R. I.* 293, 107 *A.* 205, 5 *A. L. R.* 440; *London & S. W. Ry. Co. v. Gomm*, 20 *Ch. Div.* 562), the statute of frauds might require that the representations made be in writing. *Sprague v. Kimball, supra; Ham v. Massasoit Real Est. Co., supra.* But, curiously enough, many cases in which relief was given, though the representations relied on were merely oral, do not even consider the possible application of the statute of frauds. See 2 *Tiff. on Real Property* 1431, *supra.* Moreover,

in *Hall v. Solomon, supra,* it was expressly held that an agreement restricting the use of land was not a contract for the sale of any interest therein, within the meaning of that statute. But, at this stage of the case it is not necessary to determine which theory should be applied, or whether the statute of frauds is applicable. It does not clearly appear on the face of the bill whether the representations made by Mr. Wright were oral or written. It merely alleges that they were made, and induced the sale to the complainant. Under the admitted facts, if they were in writing, there can be no question as to the complainant's apparent rights. But even if cases like *Sprague v. Kimball* are controlling, the bill is not so clearly defective on its face that a failure to comply with the statute of frauds can be raised on demurrer. *Commissioners of Lewes v. Breakwater Fisheries Co.,* 12 *Del. Ch.* 269, 112 *A.* 376; *Story's Eq. Pl.* 629, *note;* 9 *Ency. Pl. & Pr.,* 704. Nor do any facts appear which justify a demurrer on the ground of laches, on the part of the complainant. See *Bay Newfoundland Co. v. Wilson & Co.,* 24 *Del. Ch.* 30, 4 *A.* 2d 668; *Federal United Corp. v. Havender,* 24 *Del. Ch.* 318, 11 *A.* 2d 331.

The defendants' demurrer to the complainant's bill is overruled, and an order will be entered accordingly.