CHARLES A. HOLLINGSWORTH and DOROTHY V. HOLLINGS-
WORTH, his wife; WILLIAM Y. MUSSER and GRACE E.
MUSSER, his wife; JOHN W. BARNHART, ROSS CAR-
DINALE, MILDRED BALLANCE, WILLIAM CRATHER, and
REGINA CRATHER, his wife; ALBERT GEORGE, JOHN H.
ARNOLD, RICHARD L. WILLENBORG and ELEANOR WIL-
LENBORG, his wife; ANNA M. HUTCHISON, CARROLL T.
SHELTON and PAUL A. BRODY,

*vs.*

EDWARD J. SZCZESIAK and RITA M. SZCZESIAK, his wife, and
MITCHELL PODRALSKI.

*New Castle, December 4, 1951.*

*John M. Bader,* Wilmington, for plaintiffs.

*John J. DeLuca* and *Joseph A. Julian, Jr.,* Wilmington, for defendants.

BRAMHALL, Vice Chancellor: Defendants Szczesiak are residents and owners of a property situate in a recent development known as "Vilone Village", a residential subdivision located in the incorporated town of Elsmere, New Castle County, Delaware. Plaintiffs are residents and property owners of said "Vilone Village" and reside in the vicinity of the residence of the defendants Szczesiak. The property of the defendants Szczesiak and the properties of the plaintiffs are of all brick construction upon a concrete foundation. Shortly after the purchase of the property now owned and occupied by them the defendants Szczesiak employed the defendant Podralski to erect on their property a building for the purpose of housing a truck and an automobile and also including a small space for a work bench and work facilities. This building was to be of concrete block construction with a brick veneer facing, with a flat roof, and was of a size somewhat larger and with entrances somewhat different from those of the usual private two-car garage. At the time defendants were first notified that there was objection to the building, the foundation was laid and some of the walls were two or three feet high. The property was substantially completed, with the exception of the roof and the doors, when work was stopped as a result of a restraining order issued against the defendants by this court.

Applicable to the properties in "Vilone Village" are certain restrictive covenants contained in an instrument executed by the original owners of said development, one Alfred J. Vilone and Olga M. Vilone, his wife, dated August 27, 1947, and of record in the Office of the Recorder of Deeds of New Castle County, regulating the design, construction, location, use and occupancy of the buildings which might be erected in said development. The restrictions pertinent to this case are as follows:

"1. If the parties hereto or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the persons violating or attempting to violate any such covenants and either to prevent him or them from so doing or to recover damages or other dues for such violation;

"2. No structures shall be erected, altered, placed or permitted to remain or be used on any residential building plot other than one detached single-family dwelling for residential use only, not to exceed two stories in height and a private garage for not more than two cars.

"3. No building shall be erected, placed or altered on any building plot in this subdivision until the building plans, specifications and plot plan showing the location of such building have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location of the building with respect to topography and finished ground elevation, by a committee composed of Alfred J. Vilone, Olga M. Vilone and Mary Silicato of No. 1712 Linden Street, Wilmington, Delaware; or by a representative designated by a majority of the members of said committee. In the event of the death or resignation of either of said committee, the remaining member or members shall have full authority to approve or disapprove such design and location, or to designate a representative with like authority. In the event said committee, or its designated representative, fails to approve or disapprove such design and location within thirty days after said plans and specifications have been submitted to it or, in any event, if no suit to enjoin the erection of such building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this covenant will be deemed to have been fully complied with. Neither the members of such committee, nor the designated representative shall be entitled to any compensation for services performed pursuant

to this covenant. The powers and duties of such committee, and of its designated representative, shall cease on and after January 1, 1953. Thereafter the approval described in this covenant shall not be required unless, prior to the said date and effective thereon, a written instrument shall be executed by the then record owners of a majority of the lots in this subdivision and duly recorded appointing a representative, or representatives, who shall thereafter exercise the same powers previously exercised by said committee.

\* \* \* \* \* \*

"9. No noxious, or offensive trade or activity shall be carried on upon any portion of the above described tract or parcel nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"10. No trade, business, commerce, industry or occupation shall be conducted on any residential lot or in any residential structure erected thereon except where a licensed physician or dentist uses a portion of the dwelling in which he resides as an office.

\* \* \* \* \* \*

"13. No detached garage shall be located nearer than sixty feet to a front line. No garage shall be more than one story in height. Each garage shall be constructed of like materials and shall conform in appearance with the architectural design of the dwelling structure on each lot."

Plaintiffs contend that the defendants have violated the restrictive covenants covering their property in that (1) there was no approval of the plans, specifications and general plot plan of the building proposed to be erected by the committee set up in the instrument of August 27, 1947; (2) that any plans and specifications which might have been presented for this building as contemplated by defendants did not comply with the general plan for the development and would not have been approved by the committee; (3) that the proposed building is not in compliance with the restriction limiting such construction to "a private garage for not more than two cars"; (4) that the building in question is not constructed of brick upon a concrete foundation, in accordance with the restrictive cove-

nants and in accordance with the general plan of buildings in this development.

Defendants admit that no application was made to or approved by the committee for the erection of the building. They contend, however: (1) that the building does conform with the general plan; (2) that it is a private garage for not more than two cars; (3) that, since the building was almost completed, under restriction number three no injunction will be ordered; and (4) that the plaintiffs are guilty of laches.

The court is called upon to determine:

1. Were the defendants sufficiently informed of any serious objections in the neighborhood to the type of building which they were erecting?

2. Did the defendants violate the restrictive covenants against the lots on this development?

3. Are the plaintiffs prevented from pursuing their remedy in this court by reason of their laches or acquiescence?

4. Are the plaintiffs entitled to a writ of mandatory injunction?

### 1. Notice to Defendants.

The only important testimony offered in this case not covered by the stipulations relates to the knowledge of the defendants Szczesiak of the existence of the restrictive covenants and the manner in which they received notice from property owners in the neighborhood of their contention that they were violating said restrictions.

As to the notice to the defendants, in addition to the recording of the restrictive covenants and the statement thereof on their own deed, defendant Edward Szczesiak admitted that shortly after the beginning of work he received a telephone call, in which one of the property owners

of the community, a Mr. Arnold, notified him that defendants were not complying with said restrictions; that Mr. Szczesiak replied that he had a permit and was going to build on the property and that if Mr. Arnold had anything to say about the matter he could say it to Mr. Szczesiak's lawyer; that Mr. Szczesiak then consulted his attorney, who, in turn, read to Mr. Szczesiak the restrictions on this lot.

In view of these admissions, I must conclude that the defendants Szczesiak knew about the restrictive covenants and received notice thereof and the objection of other property owners within a reasonable time after the beginning of construction.

## 2. Violation of Restrictive Covenants.

The dwelling house on said property is built of brick upon a concrete block foundation. The building which defendants Szczesiak attempted to erect is of concrete block construction with a brick front veneer. It is approximately thirty feet long and was designed for the purpose of housing a truck used by the defendant Edward Szczesiak in his business, an automobile, and a work bench. It also is somewhat higher than the usual private garage. The dwelling has a sloping roof, whereas the roof of the garage is flat.

Does the garage building conform to the general scheme or plan of development? Does it comply with the restrictive covenants? I think not. The purpose of a general plan of development, with restrictive covenants against the different properties to enforce such a plan, is ultimately to develop a community in which the individual structures and ground plans will blend harmoniously with the whole in forming an attractive residential community. Placing the building with a construction largely of concrete block instead of red brick, a flat roof instead of a sloping roof, of considerably larger size and somewhat higher than the usual two-car private garage, and with an unusually

large entrance for the truck, in a strictly residential community in which practically all the other residences and ground plans are harmonious would leave the defendants' building striking in its unlikeness to the community as a whole.

When the defendants Szczesiak purchased the property in question there had been in existence for some little time a general plan relative to the development of these properties. The restrictive covenants were of record and were either included or referred to in the deeds of the purchasers. At that time defendants Szczesiak either knew, or were put upon inquiry, as to the existence of these restrictions and as to what was contained therein. The restrictions in question, among other things, provide first that the plans and specifications must be approved by a committee named in the plan for that purpose before any owner of a lot could begin to build. Strangely, they also provided that unless injunctive process should be instituted before completion, the plans would be considered as approved and no action would then lie for any violation thereof. The defendants Szczesiak entered into a contract and began to build without first submitting their plans and specifications to the committee for approval. Objection thereto was made by a Mr. Arnold to the defendant Edward Szczesiak a few days after the work had begun. At that time the foundations had been laid and some of the concrete block walls were two or three feet high. The defendant Edward Szczesiak stated to Arnold that he had a permit to build and that if the person making the objection had any further objections to make he could take it up with his (Szczesiak's) counsel. The work progressed without delay until the defendants were stopped by the service upon them of the restraining order in this case.

It is significant that the defendants Szczesiak did not attempt to secure the approval of the committee before proceeding with the work, although it developed, when objection was made a few days later, that they had already

consulted counsel. The defendant Edward Szczesiak also admitted that he got in touch with his counsel after objection was made and that at that time his counsel read to him the restrictions against his property. Nevertheless, the defendants continued without interruption with the progress of the work.

■ ■ Provisions authorizing a committee to approve or disapprove plans and specifications submitted for the purpose of determining whether or not the proposed construction or alteration conforms with the general plan of development and with the restrictive covenants, when clear and reasonable and for the general benefit of the whole development, will be enforced. *Jones v. Northwest Real Estate Co.*, 149 *Md.* 271, 131 *A.* 446. In this case the committee is required to pass upon the conformity and harmony of external design with reference to existing structures and as to location with respect to topography and ground elevation. There is nothing unusual or unreasonable in this language or in its purport.

■ It is difficult to reconcile the actions of the defendants Szczesiak in this respect in any other manner than to conclude that they intended to evade the restrictions from the time they began the work until they were stopped by reason of this proceeding, relying apparently upon their ability to complete the building before any action should be taken to stop them. I therefore conclude that the defendants Szczesiak violated the restrictive covenants relative to this building with the deliberate intent to evade them.

### 3.  Laches.

■ ■ Defendants contend that the action in this case is barred by the laches of the plaintiffs. I am unable to agree with this contention. In order for the court to say that the plaintiffs were guilty of laches, there must be some evidence of an unreasonable delay on their part in asserting their objections. If the plaintiffs, knowing

their rights, did not seasonably avail themselves of the means at hand for their enforcement but suffered the defendants to incur expense, or enter into obligations or otherwise change their position, or in any way by inaction or acquiescence lull suspicion of their demands to the harm of the defendants, they might be barred from asserting their claims. *Wright v. Scotton,* 13 *Del. Ch.* 402, 121 *A.* 69, 31 *A.L.R.* 1162; *Tubbs v. Green,* 30 *Del. Ch.* 151, 55 *A. 2d* 445.

According to testimony in this case, the defendant Edward Szczesiak was called on the telephone by a Mr. Arnold, a property owner in this development living two doors away from defendants, and notified of the existence of the restrictions and of the fact that his building was not being built in accordance therewith. At that time some of the walls of the garage were between two and three feet high. Defendant Edward Szczesiak testified that he informed Mr. Arnold that he had a permit and was going ahead and build and that if Mr. Arnold had any objection, he, Mr. Arnold, should see defendants' lawyer. Mr. Arnold testified that Mr. Szczesiak stated, in addition, that he did not wish to talk with him any further about the matter. A few days later the defendant saw several persons, including Mr. Arnold, taking certain measurements.

The defendants Szczesiak thought enough of this objection to consult their counsel, who read the restrictions to them. There is also some testimony, which is uncontradicted, that the plaintiffs were laboring under the misapprehension that because of the fact that defendants had a permit to build they could not be stopped and took up the matter with the municipal authorities, without any success, with the hope of having defendants' permit revoked. Notice was given promptly after it became apparent that the defendants were violating the restrictions in the construction of the garage and suit was instituted within approximately three weeks. Under these circumstances I am unable to say that plaintiffs delayed action for an un-

reasonable period of time or that there was any actual or passive acquiescence on their part which might lull the defendants into a false sense of security. *Tubbs v. Green, supra; Wright v. Scotton, supra.*

I therefore conclude that the plaintiffs were not guilty of laches.

### 4. Mandatory Injunction.

It does not necessarily follow in every case, even though the right may be clear, that the plaintiff is entitled to a mandatory injunction. The courts will always consider the equities between the parties, and, in some cases, where a great injury will be done to the defendants, with very little if any to the plaintiff, will deny equitable relief. *Schwartz v. Holycross,* 83 *Ind. App.* 658, 149 *N.E.* 699.

Where there has been an innocent mistake or a bona fide claim of right on the part of defendants, or inexcusable or unconscionable delay on the part of the plaintiffs, or where the conduct of the defendants was not willful and inexcusable, courts in some cases have held it to be inequitable to grant a mandatory injunction. *Wright v. Scotton, supra; Bauby v. Krasow,* 107 *Conn.* 109, 139 *A.* 508, 57 *A.L.R.* 331.

However, when the defendant has gone on wrongfully in a willful invasion of another's rights relative to real property, the injured party is entitled to have the property restored to its original condition, even though the wrongdoer thereby would suffer great loss. *Tucker v. Howard,* 128 *Mass.* 361; *Lee v. Hansberry,* 291 *Ill. App.* 517, 10 *N.E.* 2d 406; *Morgan v. Veach,* 59 *Cal. App.* 2d 682, 139 *P.* 2d 976; *Nechman v. Supplee,* 236 *Mich.* 116, 210 *N.W.* 323.

In the present case the defendants are not entitled to such consideration. It has been found that with full knowledge of the restrictions they deliberately attempted to override them. They took their chances as to the

effect of their conduct with their eyes open to the results which might ensue. They cannot therefore complain if they have suffered serious damage by reason thereof.

Defendants contend that certain of the plaintiffs are not in a position to present their claims because of the fact that they entered into a written agreement with the defendants Szczesiak, in which they were given an option to use two of the walls of the building for the erection of any garage which they or either of them might desire to build. This agreement, of course, cannot be considered in determining whether or not the building of defendants is in accord with the general plan of development. It does not in any manner affect existing conditions. There is no certainty that the options will ever be exercised. The options, if valid, would have no effect upon the rights of other plaintiffs to present their claims: *Tubbs v. Green, supra.*

Plaintiffs have requested an order restraining the defendant Edward Szczesiak from using the property in the conduct of his business as a huckster. Since I am of the opinion that the order which will be issued in this case with reference to the erection of the building will likely make it unnecessary for me to comply with plaintiffs' request in this respect, should they be entitled to such an order, I shall not pass upon this question here.

I conclude that an injunction should issue restraining the defendants from violating the restrictive covenants and plan approval restrictions covering said property. Before signing a decree, an opportunity will be given to defendants within thirty days from the date of this opinion to satisfy the reasonable demands of the plaintiffs by agreeing with the latter upon a change of the present structure to comply with the requirements of the restrictive covenants. Should the defendants, in the opinion of the court, show no desire within that time to enter into such an agreement, an order will be made directing the defendants to remove

the building from the property within such time as this court may hereafter determine.

An appropriate order in accordance with this opinion will be entered on notice.