WELSHIRE, INCORPORATED, a corporation of the State of Delaware,

Plaintiff Below, Appellant,

*vs.*

HARRY B. HARBISON and KATHLEEN McNAMARA HARBISON, his wife,

Defendants Below, Appellees.

*Supreme Court, On Appeal, September 30, 1952.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.

*James P. Morford* and *William Marvel,* of Morford, Bennethum, Marvel & Cooch, for appellant.

*Stephen E. Hamilton, Jr.,* of Logan, Marvel & Boggs, for appellees.

SOUTHERLAND, Chief Justice, delivering the opinion of the court:

Plaintiff Welshire, Incorporated (herein "plaintiff"), the owner of a tract of land in Brandywine Hundred, New Castle County, lying to the northeast of the junction of the Carr and Shipley Roads, planned to create an attractive residential development upon the tract. On April 5, 1937, plaintiff prepared a tentative plan or plot of the tract, upon which the land was divided into building lots of an average frontage of 150 feet. On July 8, 1937, plaintiff, by means of a conveyance to and reconveyance from another person, imposed general building restrictions on all of the lots in the development. The first provided:

"1. The land included in the above described tract shall be used for private residence purposes only and no building of any kind whatsoever shall be erected or maintained thereon except private dwelling houses, each dwelling being de-

signed for occupation by a single family, and private garages for the sole use of the respective owners or occupants of the lots upon which such garages are erected, and not more than one residence shall be erected or constructed upon any lot shown upon the plot of Welshire."

Additional restrictions appropriate to a residential development were set forth, including a specification of required building set backs and open areas. No provision was included for the revocation or change of any of the restrictions, which were to continue until January 1, 1967. The plot was not recorded.

On July 21, 1937, defendants, having obtained a copy of the restrictions and inspected the plot, bought from plaintiff one of the lots in the development, being lot No. 4, fronting on the Carr Road. For a period of at least ten years thereafter plaintiff was unable to effect the sale of any other lot. Sometime in 1947 plaintiff decided to change the restrictions in Welshire but at that time apparently took no formal action about it. Sales were effected of two other lots in 1947 and 1950, the purchasers of which, we gather, assented to certain changes in the restrictions.

On February 9, 1951, plaintiff undertook to change the restrictions applicable to Welshire by means of conveying and reconveying the tract as before, the reconveyance setting forth revised restrictions. A revised plot was recorded. Whereas the original plot had divided the development into 77 lots with an average frontage of 150 feet, the revised plot shows the land subdivided into 114 lots, the greater part of the lot frontages having been reduced to an average of 90 to 100 feet. Reductions in the set-back and open-area requirements were also made. A clause permitting changes in the revised restrictions under certain conditions was also included, but plaintiff has conceded this change to be ineffectual. The changes in lot frontages and set backs do not apply to defendants' lot or to the lots in their immediate vicinity.

Plaintiff sought and obtained from the owners of the two lots sold in 1947 and 1950 their consent to the proposed changes. It was unable to obtain the consent of the defendants.

On August 10, 1951, plaintiff filed its petition in the court below for a declaratory judgment to the effect that plaintiff had the right

to make the 1951 changes in the restrictions and that the defendants had no right to object thereto. The defendants joined issue.

The case was tried before the Vice Chancellor upon oral testimony and exhibits. He held that the attempted changes in the restrictions had been ineffectual and that the defendants were entitled in equity to enforce them. He accordingly dismissed the petition, 88 A.2d 121, and plaintiff has appealed.

Plaintiff in the court below made three contentions and renews them here.

First, plaintiff asserts that the 1937 restrictions did not forbid change in lot size, and that therefore the only substantial change effected in 1951 related to set-back and open-area space requirements. Plaintiff urges that restrictions of this sort are to be enforced "locally" only, that is to say, they are for the benefit of lots in a particular block or square and may not be enforced at the suit of a lot owner residing in another block or square. The same principle, plaintiff says, would apply even if change in lot size is forbidden. *Rogers v. Zwolak*, 12 *Del.Ch.* 200, 110 *A.* 674, is cited in support of this argument.

We are unable to accept either of these contentions. The first restriction provides that not more than one residence shall be built "upon any lot shown upon the plot of Welshire", and the set-back restrictions are obviously drawn in the light of the width of the lots shown on the plot. The bearing of lot size upon the character of a residential development is obvious. We think the language embodied a restriction against subdividing the lots. See *Matthews v. Kernewood, Inc.*, 184 *Md.* 297, 40 *A.2d* 522.

We are also unable to agree with the argument that certain of the restrictions before us are enforceable only if the lot in which the violation occurs is in the same block or square as that of the objecting owner. In *Rogers v. Zwolak, supra*, relied on by plaintiff, the owner of a tract of land fronting on Market Street in the City of Wilmington between Twenty-fourth and Twenty-eighth Streets had sold certain of the lots lying between Twenty-fourth and Twenty-sixth Streets, and had imposed upon them a set-back or open-area restriction applicable to the Market Street frontages.

No such restriction was imposed on the remaining lots of the tract. In holding the restriction enforceable at the suit of a lot owner in the same block, the Chancellor said that such a restriction was. for the benefit of lots in the immediate vicinity of the lot bound by the restriction and not necessarily for lots in other blocks or squares. Assuming this latter holding to be correct, we do not think that it helps the plaintiff. In the *Rogers* case the intent of the "neighborhood scheme" was inferable only from the making of successive deeds imposing the same restriction; and the extent of the area to be reciprocally affected was likewise left to inference. Here the intent of the developer to establish a uniform and reciprocal system of restrictions and to make it applicable to every lot in the tract was made manifest before a single lot was sold. In such a case as this any lot owner having purchased subject to the restrictions is bound by them and may enforce them against any other owner and against the developer. *Jackson v. Richards*, 26 *Del.Ch.* 260, 27 *A.2d* 857; *Tubbs v. Green*, 30 *Del.Ch.* 151, 55 *A.2d* 445; *Hollingsworth v. Szczesiak*, 32 *Del.Ch.* 274, 84 *A.2d* 816; *cf. Gammons v. Kennett Park Development Corp.*, 30 *Del.Ch.* 525, 61 *A.2d* 391. To apply a "block rule" to the instant case would destroy the uniformity specifically intended and provided for.

Second, plaintiff contends that a material change has occurred in surrounding circumstances frustrating the purpose for which the restrictions were imposed in 1937. Plaintiff invokes the equitable doctrine that if, by reason of changed circumstances, the purpose served by the restrictions has come to an end, equity will refuse to enforce a restrictive covenant affecting real estate and in some cases will decree its termination as a cloud upon title. *The Restatement of the Law of Property* thus states the rule (*Sec.* 564):

"Injunctive relief against violation of the obligations arising out of a promise respecting the use of land cannot be secured if conditions have so changed since the making of the promise as to make it impossible longer to secure in a substantial degree the benefits intended to be secured by the performance of the promise."

And see the cases collected in the note in 4 *A.L.R.2d* 1111, 1117.

The typical case for the application of this rule is the case

of residential restrictions which have become valueless by reason of a complete change of a neighborhood from a residential one to a commercial or industrial one. Such a change supplies the reason for the decisions in many of the cases cited by plaintiff. Thus, for example, the decisions of the Supreme Court of Pennsylvania in *Price v. Anderson*, 358 *Pa.* 209, 56 *A.2d* 215, 2 *A.L.R.2d* 593, and *Katzman v. Anderson*, 359 *Pa.* 280, 59 *A.2d* 85, involved a block of land in the City of Philadelphia in a neighborhood the character of which had completely changed from residential to commercial. A similar change in the character of a section of the City of Miami Beach was presented in the case of *Osius v. Barton*, 109 *Fla.* 556, 147 *So.* 862, 88 *A.L.R.* 394. However, the change must be so complete in nature as to make it impossible to secure in a substantial degree the benefits sought to be realized through the performance of the promise embodied in the restrictive covenant. See the comment (c) to the quoted section of the *Restatement* and the illustration thereto appended. *A fortiori*, a mere change in economic conditions rendering it unprofitable to continue the development subject to the restrictions originally imposed is not in itself a change sufficient to justify the court in disregarding or abrogating the restrictive covenant. *Fidelity Title & Trust Co. v. Lomas & Nettleton Co.*, 125 *Conn.* 373, 5 *A.2d* 700; *Allen v. Massachusetts Bonding Co.*, 248 *Mass.* 378, 143 *N.E.* 499, 33 *A.L.R.* 669; *Ockenga v. Alken*, 314 *Ill.App.* 389, 41 *N.E.2d* 548.

The question presented here is one of fact, namely, whether the plaintiff has shown a change in surrounding circumstances sufficient to justify the conclusion that the restrictions no longer serve any useful purpose.

Plaintiff contended below, and contends here, that the creation during the last few years of two adjoining developments known as Shellburne and Shipley Heights has changed the character of the neighborhood so as to make it impracticable for plaintiff to sell lots with a frontage of 150 feet. The acceptable and customary lot size in the Wilmington suburban area, it appears, is 90 to 100 feet. At the time of the establishment of the restrictions in 1937, says plaintiff, economic conditions were such as to make the restrictions then adopted appropriate to a restricted

residential development. Economic changes wrought by the war, resulting in greatly increased building costs, have now rendered it impracticable, plaintiff argues, to proceed to sell and develop the remaining lots under the present restrictions. Additional costs for sewers would have to be incurred and the lot sizes must be reduced and the set-back provisions changed if plaintiff is to con-continue the development of Welshire on any practicable basis. If the relief sought for is not granted, plaintiff argues, the un-developed portion of Welshire will remain unused and the enforcement of the restrictions will thus balk the primary purpose of developing the entire tract as a residential district.

Now it is apparent that what plaintiff seeks to do is not to remove all restrictions on Welshire; it desires merely to effect a relaxation of those which it regards as so onerous as to impede the development that it had envisaged. But if the 1937 restrictions are, as plaintiff asserts, "legally dead", it is difficult to see how the defendants are accorded any protection whatever, since the 1951 restrictions are contained in a deed to which they are not parties. But we need not explore this aspect of the matter. Plaintiff's attempt to rid itself of the 1937 restrictions and then to re-establish them in part simply serves to emphasize the fact that the restrictions on Welshire are still valuable to defendants—a fact sufficiently clear from the very circumstance relied on by plaintiff.

This circumstance is the establishment of two new residential developments adjoining Welshire. We cannot find in this fact any support for plaintiff's case. So far from changing the character of the neighborhood the new developments have further established and confirmed it as a residential area. Indeed plaintiff's claim, as above noted, is not that the area has changed from a residential neighborhood to a commercial one but merely that the proximity of adjoining developments offering building lots of smaller frontage has made it impracticable for plaintiff to sell its own lots.

In the light of the fact that plaintiff sold but one lot in the development during the ten years after its establishment, and of its decision in 1947 to change the restrictions the connection between the creation of the new developments and the failure of

plaintiff's development is not apparent. But this consideration apart, it is obvious that plaintiff's argument reduces to the proposition that if a developer has fastened upon a residential development conditions which subsequently become so burdensome as effectively to deter the further development of the area, he is entitled to change or abrogate the restrictions to the extent necessary to make continued development practicable. Plaintiff cites us to no decision so holding, and in our opinion it is not the law. As above stated, changed economic conditions that impose upon a developer greater burdens than expected do not supply a reason for applying the rule invoked here by plaintiff. General language may be extracted from adjudicated cases to the effect that outmoded restrictions must give way to modern conditions and that changed circumstances may render equitable enforcement of restrictive covenants oppressive and unreasonable. These general statements must be related to the facts that prompted their utterance; they are inapplicable here. We agree with the Vice Chancellor that the facts shown are insufficient to warrant equitable relief.

Finally, plaintiff contends that defendants will suffer no damage from the proposed changes in the restrictions, and therefore are not entitled to enforce them and should be left to their remedy at law. At all events, says plaintiff, any damage to defendants is so slight as to be negligible, and upon a balancing of the equities the hardship upon plaintiff resulting from enforcement will be found to be vastly greater than any possible damage to defendants flowing from the changes. It is elementary that he who seeks equity must do equity, and a suitor for equitable relief may be required to recognize any equity of his adversary, and any inequitable conduct of such a plaintiff may justify the withholding or conditioning of equitable relief. But no inequitable or misleading conduct of these defendants is shown. The recent holding of this court in *Richard Paul, Inc., v. Union Improvement Co., ante p.* 113, 91 *A.2d* 49, 55, is decisive of the question. In that case a tenant, asserting the right to an easement appurtenant to leased premises, sued to enjoin interference by the landlord with the easement. His right to the easement was upheld, but the Court of Chancery refused injunctive relief because the landlord

had offered to give him an alternative right of way which appeared to be a reasonable substitute. This court reversed, holding that a suitor's legal rights must be protected in equity unless his conduct has created an estoppel against him or an equitable right in his adversary. Finding no inequitable conduct by the plaintiff, the court held that the injunction must issue. Referring to the maxim that he who seeks equity must do equity, this court said: "A court of equity, however, may not utilize this maxim to rewrite the plaintiff's legal rights". A case applying this rule to the enforcement of restrictive covenants affecting real estate is *Evangelical Luthern Church v. Sahlem*, 254 *N.Y.* 161, 172 *N.E.* 455, 457. There a single lot owner, as here, had refused his consent to a proposed violation of such a covenant, and the court was asked to "balance the equities" on the ground of relative hardship, the lot owner's damage being unsubstantial. No inequitable conduct of the lot owner was shown. Chief Judge Cardozo held it unnecessary for him to show damage, and said further:

"The defendant, the owner, has done nothing but insist upon adherence to a covenant which is now as valid and binding as at the hour of its making. His neighbors are willing to modify the restriction and forego a portion of their rights. He refuses to go with them. Rightly or wrongly he believes that the comfort of his dwelling will be imperiled by the change, and so he chooses to abide by the covenant as framed. The choice is for him only."

We think the defendants are entitled to enforce the provisions of the 1937 restrictions.

The decision of the Vice Chancellor rejecting the plaintiff's contentions was clearly correct, and the judgment below is affirmed.