UMBERT V. POMILIO and MARY C. POMILIO,
Plaintiffs,
*vs.*

ALEXIS A. CASERTA and JULIA CASERTA,
Defendants.

*New Castle, December 9, 1964.*

*John Biggs, III,* of Bader & Biggs, Wilmington, for plaintiffs.

*James P. Collins,* of Metten, Healy & Collins, Wilmington, for defendants.

MARVEL, Vice Chancellor: Plaintiffs are the owners of a house where they reside at 104 Greenridge Road in Silverbrook, a small residential development on the Lancaster Pike in the vicinity of the former DuPont Airfield. Defendants' residence is located at 106 Greenridge Road on a lot which adjoins plaintiffs' on the north. According to plaintiffs, the deed whereby they became the owners of their home lot on Greenridge Road as well as defendants' basic deed and those of others on the same short, dead end street contain inter alia the following provision:

> "No building or any part thereof shall be erected or maintained upon any part of the hereinabove lot or parcel of land within thirty-three feet of the front building line, nor shall any building be erected within ten feet of any dividing line of any adjoining lot or parcel of land."

Plaintiffs claim that defendants with full knowledge thereof have erected an addition to their home in violation of the above provision of their deed and complain that the existence of such addition is "* * * a source of annoyance * * *". Plaintiffs seek an order directing defendants to remove that part of the addition complained of which extends beyond the building line stipulated in their deed and pray for such other relief as the Court may deem appropriate.

Defendants admit that they are the owners of 106 Greenridge Road and concede that plaintiffs are the owners of 104 Greenridge

Road, but aver that both of the contiguous lots on which the present litigants have built homes have been extended by the purchase of additional lands adjoining such lots. Defendants also admit that their original deed as well as that of plaintiffs contain the restrictive covenant set out in the complaint, but deny all other allegations thereof. In a request for admissions, which plaintiffs do not controvert, defendants have submitted a plot plan which discloses that half of the north-south common boundary between the litigants is unrestricted and that as to the remainder of such common boundary line both litigants are bound to a sideline building restriction of ten feet. Next, by way of affirmative defense, defendants charge laches, alleging that from the time of the erection of the addition to their dwelling in mid-April 1956 until mid-April 1963, plaintiffs "* * * with actual and or imputed knowledge of the work, failed and neglected to object to the said addition or to assert any contrary right, upon which Defendants relied to their great prejudice * * *". Much of the same contention is made in an affirmative defense based on the theory of estoppel. Defendants also aver that plaintiffs' remedy at law for damages is adequate and stress the extreme hardship which would be caused defendants were they to be required to cut back their addition so as to cause it strictly to conform with the deed restriction. Finally, defendants take the position that the restriction in question has lost any force it may have had as a result of changes in the community and the passage of time, and that, in any event, it is in conflict with earlier restrictions imposed on the land in question on August 1, 1950.

Both sides having engaged in pre-trial discovery and filed affidavits in support of their respective positions, defendants have filed and brought on for argument their motion for summary judgment. Plaintiffs oppose such motion, contending that the issues raised in the pleadings can not be decided short of trial. This is the opinion of the Court on defendants' motion.

Defendants' motion is based on their defenses of laches and estoppel and the theory that in a balancing of the equities as between the parties, defendants are entitled to judgment because of the gross disproportion "* * * of inequity and hardship * * * to them * * * as compared with the absence of minimal benefit * * *" to plain-

tiffs. In their brief defendants allude to other facts which they contend are either uncontroverted or uncontrovertible, namely that there is a distinction between the phrase "* * * No building or any part thereof * * *", the restriction applying to defendants' front building line, and the phrase "* * * nor shall any building * * *" in the restriction applicable to the side building line here in controversy. Defendants also stress what they contend to be the absence of any clearcut building plan for the short street of some ten lots where the litigants live, one of which lots is allegedly entirely unrestricted, and two of which are presently devoted to commercial uses. Defendants also point out that certain other boundary lines of defendants' lands are not restricted for building purposes. Defendants, however, fail to recognize what is apparent from a view of the area in question, namely that the part of Greenridge Road here involved is a well kept, residential, dead end street marked by brick entrance posts which separate it from commercial lots on Lancaster Pike.

Defendants acquired the lot here in controversy in June 1952, while plaintiffs purchased their adjoining lot in February 1953. After their respective homes were built, defendants, on April 17, 1956, obtained a building permit for the construction of an addition to their home, and with most of the work being done by Mr. Caserta, a room and screened porch measuring approximately 12' by 15' was completed at the end of September 1956. Such addition cost approximately $5,000, and there is no doubt but that its southerly portion extends approximately three feet into the ten foot restricted side line area of defendants' lot. Plaintiffs, however, failed to take any action to bring about a rectification of defendants' violation of the building restriction here involved until April 1963 when the complaint herein was filed. They claim, however, that such inaction was reasonable and under the circumstances must be excused.

[■ At the time defendants put in their addition plaintiffs assumed, according to their affidavit, that the latter were aware of the actual boundary line between their property and plaintiffs' and that the latter would build "* * * in conformity with the side yard restriction appearing in their (defendants') deed and also appearing of record * * *". Thus, it appears that plaintiffs, while professing to be

ignorant of their own property line, were aware of the fact that defendants' deed contained a building line restriction. And while they profess no contemporaneous knowledge of a similar restriction in their own deed, they must be deemed to have had constructive notice thereof, *Everett v. Goudy (Memorandum Opinion,* May 6, 1964, *Ct. of Chancery).*

At about the same time that the controversial addition was put in, defendants, with plaintiffs' acquiescence, also built a so-called retaining wall between the neighboring homes in the middle of which (halfway between defendants' home as extended and the northerly wall of plaintiffs' home) wooden steps were installed. Again, with plaintiffs' approval these steps were replaced with masonry steps in 1961. Unbeknownst to plaintiffs, according to their affidavit, and to the defendant Alexis Caserta, according to his deposition, such steps instead of straddling the parties' boundary line, were entirely on plaintiffs' property. Plaintiffs contend that the effect of such action on defendants' part combined with other actions of defendants, such as the planting of rose bushes on each side of the steps, the painting of the wall to a point approximately ten feet from the addition complained of, and the cutting of grass on what later proved to be plaintiffs' property, led plaintiffs reasonably to believe that the line dividing the litigants' home lots was other than that actually fixed by deed. Finally, in the spring of 1962, defendants, after having a survey made, put up a post and rail fence which is actually on or within a few inches of the parties' actual property line, at which time they as well as plaintiffs profess to have finally become aware of their actual boundary. Plaintiffs' affidavit goes on to say: "As a result of the erection of said fence, plaintiffs measured the distance between the said fence and plaintiffs' house, the distance between the defendants' house and thereupon discovered that defendants had erected their addition in violation of the side yard set back upon defendants' land to the injury of plaintiffs." However, they waited a year, namely until April 1963, to sue.

While the defendant Alexis Caserta claimed on deposition to have had no knowledge of the side-line restriction affecting his property until he and his wife were sued, an assertion plaintiffs question

and of which, in any event, defendants must be deemed to have had constructive notice, *Everett v. Goudy,* supra, 26 *C.J.S. Deeds* § 167(5), and compare *Annotation,* 23 *A.L.R.2d* 520, the point is that plaintiffs, who profess to have known, as of the time of the controversial addition, of defendants' side line restriction, nonetheless failed, in response to defendants' initial moves to carry out their plan, to have taken the obvious precaution of determining and making clear to defendants exactly where the line between their lot and their neighbors' ran and the area within which defendants' addition must be built.

A court of equity will not overlook staleness in a claim where it appears that plaintiff's delay in seeking relief is sought to be excused on claimed lack of knowledge where such lack of knowledge is actually due to culpable neglect, *Bovay v. H. M. Byllesby & Co.,* 25 *Del.Ch.* 1, 12 *A.2d* 178. And while each case in which laches or estoppel is asserted as a defense to a claim involving building restrictions must be determined on its own facts, here I am satisfied that plaintiffs' delay in taking appropriate action, when viewed in the light of their professed knowledge of defendants' deed restriction and their access to supplementary knowledge to be found in their own deed, is inexcusable. Unlike the factual situation in *Wright v. Scotton,* 13 *Del.Ch.* 402, 121 *A.* 69, 31 *A.L.R.* 1162, where the mere erection of a building was not considered notice that defendants were about to violate a covenant not to compete, here plaintiffs profess to having had knowledge of defendants' side line restriction since 1956. Furthermore, they have had in their own deed the means of determining the precise boundaries of their home lot since 1953. Plaintiffs' reliance on physical appearances to the contrary can not be justified. Compare *Bave v. Guenveur,* 36 *Del.Ch.* 48, 125 *A.2d* 256.

In the light of the material, uncontroverted facts of record, plaintiffs' failure to seek protection of their rights while their next door neighbors began and completed an addition to their home at a cost of $5,000 clearly disqualifies them from being granted the extraordinary remedy of mandatory injunctive relief. In other words, notwithstanding defendants' failure to observe a side line building restriction, plaintiffs' unwarranted assumptions concerning defendants'

knowledge and consequent acquiescence in what was being done by them until long after the addition was completed bars plaintiffs from the drastic relief they now tardily seek. It is well established in Delaware that one seeking injunctive relief must do equity, *Welshire, Inc. v. Harbison,* 33 *Del.Ch.* 199, 91 *A.2d* 404, and compare *Richard Paul, Inc. v. Union Improvement Co.,* 33 *Del.Ch.* 113, 91 *A.2d* 49. Plaintiffs' actions have been such as to deny them the choice accorded the equitably acting defendant in *Evangelical Lutheran Church v. Sahlem,* 254 *N.Y.* 161, 172 *N.E.* 455. Finally, there is no showing on the record before me of a wilful invasion of plaintiffs' rights by defendants, *Hollingsworth v. Szczesiak,* 32 *Del.Ch.* 274, 84 *A.2d* 816.

In view of these conclusions it is unnecessary to consider defendants' technical argument as to how the restriction in question should be read or their contentions concerning the alleged legal ineffectiveness or desuetude of such restriction.

There being, in view of the undisputed, material facts of record, no basis in law for granting mandatory injunctive relief to plaintiffs, defendants' motion for summary judgment of dismissal of the complaint will be granted to the extent that injunctive relief is therein sought. Counsel may confer with the Court as to what further proceedings are necessary to determine plaintiffs' proper damages, if any.

Order on notice.