**1.77 ACRES OF LAND, etc., Robert A. and Laura L. Cunningham, his wife, and Unknown Owners, Defendants Below, Appellants,**

**v.**

**The STATE of Delaware upon the relation of the STATE HIGHWAY DEPARTMENT, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

April 10, 1968.

William D. Bailey, Jr., of Bayard, Brill & Handelman, Wilmington, for appellants.

Aubrey B. Lank of Theisen & Lank, Wilmington, for appellee.

WOLCOTT, Chief Justice, CAREY, Justice, and SHORT, Vice Chancellor, sitting.

WOLCOTT, Chief Justice.

This is an appeal by the landowners, Cunninghams, from an interlocutory judgment in a condemnation proceeding holding

that a restrictive covenant was applicable to the land in question which required it to be valued on a residential rather than industrial basis. The land is 5.46 acres out of a tract of 15.630 acres lying along the northwesterly side of Governor Printz Boulevard in Brandywine Hundred. The State is taking the 5.46 acres in question to relocate Governor Printz Boulevard to the westward to permit the construction of Interstate Route I–495 which will run along lands of the P. B. & W. Railroad lying between it and the Delaware River.

The land in question is part of a tract of 200 acres acquired in 1901 by Joseph S. Keen. When first acquired, it lay between River Road and the Delaware River. No public thoroughfare passed through the tract. On the land Keen developed a large country estate consisting of a manor house, extensive landscaping and open farm land.

In 1910 and 1912 Keen acquired from A. Barklie immediately to the north additional land. Keen died in 1927 but in his lifetime he made certain conveyances away from his holdings.

In 1901 he sold 1¼ acres to William C. Newport Co. with no restrictions.

In 1911 he sold 45 acres to Richard Sellers and 12.9 acres to his (Keen's) son with restrictions generally speaking not to permit any manufacturing or noxious use upon the premises.

In 1916 and 1921 he sold to Helen Baer Coxe a total of 35.14 acres from the northerly portion of his land. The two deeds conveying this contained restrictions to the effect that the purchaser may not maintain a building for commercial or manufacturing purposes, or other offensive or obnoxious occupations. These deeds also contained a covenant requiring Keen in future conveyances of "any land adjacent to the land hereby conveyed" to include similar restrictions in the deeds.

In 1935, following Keen's death, a strip of land contiguous to the Cunningham land to the east was conveyed by Keen's testamentary trustees to the State. This land ultimately became the bed of the Industrial Highway, renamed the Governor Printz Boulevard, created as an alternative truck route to avoid the steep grade of Penny Hill to the west. Originally opened as a two-lane road in 1935, it was expanded in 1941 to a four-lane road. The Boulevard as constructed cut through the landscaped portions of the Keen Estate entailing the removal of trees.

Between 1935 and 1952, other pieces of the Keen lands were conveyed by his testamentary trustees by deeds which include no restrictions. In 1952, the Cunninghams' land was deeded to them without restriction.

The Cunningham tract runs along Governor Printz Boulevard for a distance of approximately 1000 feet with a depth at the northerly end of approximately 400 feet and a depth at the southerly end of approximately 630 feet. In 1954 the Cunningham and other land along the Boulevard was zoned M–1 to a depth of 400 feet. All of the Cunningham land being taken by the State lies within the M–1 classification. At this time, Kynlyn Apartments, a residential development adjacent on the south to the Cunningham land, assented to the M–1 zoning.

Land development along Governor Printz Boulevard has been largely commercial or light industrial in character. The nearest residence on Governor Printz Boulevard to the Cunningham land was 1.2 miles away and there has been no recent residential construction along the Boulevard.

The Cunningham land is bounded on the south by the Kynlyn development, 400 feet of which is now zoned M–1, which portion was never developed residential, presumably, because it lay along the Boulevard. The Coxe tract, in the conveyance for which is found the restrictive covenant, is now divided from the Cunningham land by land of one I. Finnacchaico conveyed in 1952 without restriction. The Coxe man-

sion is now an institution. The Keen mansion has been demolished.

Along this particular section of the Governor Printz Boulevard, the land to the west, including Cunningham's, is level with the road for approximately 400 feet in depth then rising to a height of approximately 30 feet. Along the ridge to the west, residential development has been taking place, while along the level of the Boulevard commercial or light industrial development has been taking place.

The basic question before us is the basis on which the Cunningham land should be valued for condemnation purposes. The State maintains that because of the restriction contained in the Coxe deed the Cunningham land is necessarily restricted to residential purposes, and must be valued as such. The Cunninghams, on the other hand, maintain that the Coxe deed restriction is inapplicable as to their land or, if it is, it is unenforceable, and that the land should be valued on the basis of industrial use.

The trial judge held the Coxe deed restrictions were valid and enforceable, and that the Cunningham land should be valued upon the basis of residential use. We disagree.

■ In Welshire, Inc. v. Harbison, 33 Del.Ch. 199, 91 A.2d 404, we held that certain deed restrictions there involved were still enforceable over the objections by the owner that changed circumstances had brought to an end the purpose sought to be achieved by the restrictions. In doing so, however, we recognized the equitable doctrine that under certain circumstances restrictions on land could become inoperative. In so doing, we stated the typical case for the application of the doctrine to be the one in which residential restrictions have become valueless by reason of a complete change of a neighborhood from a residential one to a commercial or industrial one. See Restatement, Property, § 564; Annotation, 4 A.L.R.2d 1111.

■ We think the record at bar, assuming the application of the restriction, if it does not compel the conclusion that the character of the neighborhood has so changed as to make residential restrictions valueless, at least approaches that result. If, indeed, it does not rise to the extent of compelling that result, it so nearly does that, coupled with other circumstances, it permits no other conclusion.

Furthermore, it is to be noted that the only restrictions which may be said to be imposed upon Keen and his successors and assigns is the requirement that he will not convey any property then owned by him "adjacent" to the Coxe land without imposing the restrictions. "Adjacent" land is not defined in the restrictive covenant.

In point of fact, the land of Cunningham is separated from the land of Coxe by land acquired by Finnacchaico in 1952 from Keen's testamentary trustees, but apparently subsequent to the acquisition by Cunningham. It would seem to us that to hold that at the time of the conveyance to Coxe Keen intended to bind himself to restrict all of his land as "adjacent" to Coxe, irrespective of its actual proximity, is to read more into the covenant than could have been intended.

It would seem to be a permissible conclusion that the restriction, if enforceable at all, is enforceable solely against the Finnacchaico land which, in fact, is contiguous to the Coxe land and thus certainly "adjacent". We do not say that this is the necessary conclusion, but it is certainly a permissive one.

■ The result, therefore, is ambiguity in the restrictions which, if enforced against the Cunninghams would first require judicial construction. When such is the case, since restrictions on the alienation of land are frowned upon, it will be strictly construed against the person seeking to enforce it. Norris v. Williams, 189 Md. 73, 54 A.2d 331, 4 A.L.R.2d 1106.

**516**

There is one other factor which must be taken into consideration. The land being taken is zoned M–1, or industrial. Under such a zoning classification, the erection of residential structures is prohibited by the Zoning Code. If, therefore, the restriction in the Coxe deed is held to be binding on the Cunningham land, the result would be to prohibit any use of the land at all. It could not be used for industrial purposes by reason of the restriction, but at the same time it could not be used for residential purposes by reason of the Zoning Code. The result would be a sterile stalemate of the use of the land—a result the law frowns on.

Accordingly, we think, taking into consideration all of the foregoing, that the Cunningham land is unrestricted as to use except as restricted by the Zoning Code. It must, therefore, be valued on that basis.

The interlocutory judgment below is reversed.

ON PETITION FOR REARGUMENT

The State petitioned for reargument after the filing of the foregoing opinion. It raises seven points in support of reargument. We have considered all of them and deny reargument, but comment briefly upon the State's sixth point.

The State's sixth point relates to our holding that if the deed restriction is to be enforced, then a stalemate results because the zoning of the land to the M–1 classification would prohibit the erection of residential structures. The point made is that no reported decision has been found in which it has been held that zoning ordinances change valid deed restrictions.

The State's statement to this effect is true, but we think it immaterial. At the oral argument counsel for both sides conceded that the effect of the change in zoning to the M–1 classification, presumably valid, effectively precluded the erection of residences on the land in question. Thus, occurred the stalemate. Upon this, the statement in the opinion was based.

Furthermore, such authority as there is supports the statement. See Restatement of Property, § 568 and 3 Rathkopf, Zoning and Planning, p. 74-4 et seq.

The petition for reargument is denied.