CHARLES C. GAMMONS, SARAH C. GAMMONS, EMMETT S. HICKMAN, ETHEL S. HICKMAN, GEORGE T. BARNHILL, JR., ETHEL P. BARNHILL, SAMUEL LENHER, IRENE KIRKLAND LENHER, LOUIS C. SEEBACH and MILDRED G. SEEBACH,

Defendants Below, Appellants,

vs.

KENNETT PARK DEVELOPMENT CORPORATION, a corporation of the State of Delaware,

Plaintiff Below, Appellee,

WESTOVER HILLS, INC., a corporation of the State of Delaware, and DELAWARE LAND DEVELOPMENT COMPANY, a corporation of the State of Delaware,

Defendants Below, Appellees.

*Supreme Court, On Appeal, September 2, 1948.*

TERRY, CAREY and PEARSON, JJ., sitting.

*Hugh M. Morris and S. Samuel Arsht,* of the firm of Morris, Steel, Nichols & Arsht, *Thomas Herlihy, Jr.* and *Morris Cohen,* of the firm of Cohen & Cohen, for appellants.

*Clair J. Killoran,* of the firm of Killoran & Van Brunt, for Kennett Park Development Corporation.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for Delaware Land Development Co.

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, for Westover Hills, Inc.

CAREY, Judge, delivering the opinion of the court:

For convenience the designation of parties used by the court below will be followed. The defendants below-appellants will herein be designated "individual defendants", the plaintiff below-appellee will be called "Kennett", and the defendants below-appellees will be designated collectively as "corporate defendants" and individually as "Westover" and "Development".

The petition filed below prayed for a declaratory judgment declaring that the corporate defendants can lawfully at any time release, modify or terminate certain restrictions upon Section D of Westover Hills without infringing upon

the rights of other property owners in Westover Hills, an unincorporated real estate development near Wilmington. From a decision granting the prayer (*ante p.* 235,) this appeal was taken by the individual defendants, who are not only property owners themselves but also constitute a committee representing the other individual property owners in Westover Hills.

A rather lengthy review of the facts is necessary in order to understand the contentions of the parties.

Prior to April 24, 1926, William duPont, Sr., owned a tract of land containing about 640 acres along Kennett Pike in Christiana Hundred. All but eleven acres lies on the southerly side of the Pike. On that date, he conveyed the entire property without restrictions to Development, subject to a lease covering 145 acres of the easterly portion occupied by Wilmington Country Club and used as a golf course. This land is still in the tenancy of the club, a new lease having been executed without restrictions. At the time of the conveyance, Development was a corporation controlled by William duPont, Sr., and, since his death in 1928, has been and is now controlled by William duPont, Jr. Westover is a corporation controlled by Mr. duPont's sister, Marian duPont Scott.

On June 30, 1926, Development conveyed to William duPont, Jr., who immediately reconveyed to Development, a portion of the lands on the northeast side subject to certain restrictions. This portion later came to be known as Section A of Westover Hills. Attached to the deed was a plot showing a division of this portion into 60 or more lots with certain streets running through them. Deeds thereafter given for these lots have incorporated by reference the restrictions contained in the instrument of June 30, 1926.

Later in the same year, Development conveyed the 11 acre tract on the northerly side of Kennett Pike to Ethel duPont without restrictions. On April 25, 1927, it conveyed to Alice duPont Ortiz about 88 acres on the southwesterly end of the original tract without restrictions.

On October 30, 1928, Development, by the process of conveying through William duPont, Jr., placed restrictions upon another portion containing about 38 acres adjacent to Section A. The plot attached to the deed showed a division of this area into lots and designated it as Section A Extension. Later conveyances of lots in this section incorporated by reference the restrictions contained in this deed.

The next step was another straw conveyance dated August 28, 1929, through William duPont, Jr., for 69 acres, described as Section C, another subdivision to the west of Sections A and A Extension. A plot was also attached and restrictions were imposed, which have been incorporated in later deeds for individual lots by reference to the instrument of August 28, 1929.

On March 6, 1930, Development conveyed 25 acres, which was designated as a part of Section E, to Delaware Trust Company, Trustee. This area lies to the south of Section C. In contrast to former conveyances, this deed contained restrictions only against business and manufacturing use and provided that it could be used only for residential purposes. This tract was later conveyed by the Trustee to Henry B. duPont and apparently forms a part of his airport. No buildings have been erected upon it.

On August 20, 1930, Development conveyed about 4 acres to Mary duPont Laird, with restrictions only against use for business or manufacturing purposes. This land was described as a part of Section E and lies southwest of the portion conveyed to Delaware Trust Company, Trustee.

On April 12, 1935, Development recorded a plot covering three acres designated as "Westover Hills Extension" and known as "Barton Circle." This subdivision is east of Section A. The area was made subject to the restrictions existing in Section A.

During 1935 and 1936, a few lots in Section E were conveyed by Development to various individuals. Restrictions against non-residential use were included in the deeds,

but they do not indicate for whose benefit they were imposed. A total of about 36 acres was involved.

On April 5, 1937, by the device of a recorded covenant to stand seized, Development subdivided about 62 acres designated as Section B, lying to the south of Section A Extension. Restrictions generally similar to those in Sections A, A Extension and C were imposed. Deeds for individual lots have incorporated these restrictions by reference to the original recorded instrument.

On July 14, 1938, Development conveyed 28 acres called "Crooked Billet" to Bellevue Park, Inc., a wholly owned subsidiary of Development. This tract adjoins Section D on the east and is actually used for residential purposes. No restrictions appear in the deed.

On the same date the land under lease to Wilmington Country Club was also conveyed to Bellevue Park, Inc. without restrictions.

On February 24, 1942, Development recorded a plot showing a subdivision of Block O. This contains 8 acres located south of Section B. Lots were sold subject to the same restrictions as Section B.

The last transfer by Development occurred on December 28, 1945, when it conveyed to Westover practically all the land remaining unsold, including Section D (except two lots), which is the northwesterly portion of the original tract and contains about 61½ acres. This conveyance was subject to the same restrictions generally as had been imposed upon Sections A, A Extension, B and C. The deed refers to a plot annexed, but no plot was actually attached nor was one recorded at that time. In 1947 an agreement was made between the corporate defendants and the Levy Court of New Castle County concerning sewers at Westover Hills and a plot was attached to that contract, which was recorded. On that plot a tentative subdivision of Section D was shown, but the area was marked "undeveloped."

By a contract dated August 12, 1947, Kennett agreed to buy from the corporate defendants all of Section D, except two lots, free and clear of "restrictive covenants, easements, reservations, conditions, charges and other encumbrances," other than certain ones contained in the contract itself. Section D was then, and is now, vacant land. The corporate defendants proposed to alter the restrictions on Section D to permit Kennett to erect garden type apartments and commercial structures. Learning of this, owners of lots in other sections of Westover Hills formed a committee consisting of the individual defendants, who threatened legal action to prevent such construction. Kennett thereupon filed this action. The corporate defendants joined in the prayer of the petition, but the individual defendants deny the right of the corporate defendants to alter or release the restrictions.

It is the contention of Kennett and the corporate defendants that the various sections of Westover Hills, in so far as restrictions are concerned, are separte and distinct units; that the restrictions in any given section were imposed only for the benefit of lot owners in that particular section; that the wording of the respective deeds shows this intention so clearly and explicitly as to rebut any possible inference or implication of a neighborhood scheme covering the whole tract.

The individual defendants dispute this argument. They contend that there is an implied uniform neighborhood scheme covering the entire development known as Westover Hills, whereby mutual and reciprocal negative easements exist in favor of and against all lots in all sections; that the deeds themselves contain evidence of this scheme, which is supported and strengthened by other extrinsic evidence; that the deeds do not explicitly negative the existence of or intention to create an all-inclusive neighborhood scheme; that the corporate defendants may not now remove the restrictions from any part of Section D.

The court below held that the language of the deeds

so clearly confined the benefits of the restrictions to owners of lots in the specific section covered by each deed that all extrinsic evidence offered by the individual defendants was inadmissible to show a contrary purpose; and that, since no lots in Section D had been sold by the developer, there is no one who can object to the removal of the restrictions in that Section.

There is no legal reason why a developer cannot develop successive portions of his lands independently of one another, imposing different restrictions (or none at all) upon each, provided the deeds clearly evidence the explicit intent to limit the burden and the benefit to the designated area or definitely show an intent not to impose similar restrictions upon all. An example of this is found in *McComb v. Hanly,* 132 *N. J. Eq.* 182, 26 *A.* 2d 891, 44 *A.L.R.* 912. Counsel for individual defendants concede that parol evidence would not be admissible to alter or vary such provisions. The principal question here is whether the deeds clearly show such an intent. Certain excerpts from them must be quoted at the expense of brevity.

In the deed of June 30, 1926 for the part originally subdivided (later called Section A), there is nothing to suggest a plan for the future development of any other portion. In the very first part of the deed appear these two paragraphs:

"Whereas, the party of the first part is now the owner of a certain tract of land located along the Kennett Pike, in Christiana Hundred, near the City of Wilmington, County of New Castle and State of Delaware, known as Westover Hills, as hereinafter more particularly described a plot of which showing the number, size, location and description of the lots therein is hereto annexed and made a part hereof; and

"Whereas, the party of the first part desires to convey to the party of the second part said lands for development and improvement purposes, and, to this end, desires that all of said lands may be subjected to certain covenants, agreements, easements, restrictions, conditions and charges, as hereinafter set forth."

Immediately after the description is this sentence:

"Annexed hereto and made a part hereof is a plot of said Westover

Hills showing the number, size, location and description of each of the lots which have been laid off and established by the party of the first part in said Westover Hills."

Following the *habendum* and *tenendum* is this language:

"Subject, however to the following covenants, agreements, conditions, easements, reservations, restrictions and charges which it is hereby agreed shall be covenants running with the land and shall be binding upon the party of the second part, his heirs and assigns, and upon all of the lands included within the aforesaid metes and bounds, which said covenants, agreements, conditions, easements, reservations, restrictions and charges are hereby imposed for the equal benefit of each lot shown upon the plot of Westover Hills hereto annexed."

## Article 2 of the restrictions reads as follows:

"Use of Land

"The land included in said tract shall be used for private residential purposes only and no building of any kind whatsoever shall be erected or maintained thereon, except private dwelling houses, each dwelling being designed for occupation by a single family and private garages for the sole use of the respective owners or occupants of the plots upon which such garages are erected; and not more than one residence shall be erected or constructed upon any plot shown upon the map or plot of Westover Hills hereunto annexed.

"Schools, &c. Limitations

"Buildings to be used for Schools, Churches, Libraries, Art Galleries, Museums, Clubs or for recreative, educational, religious or philanthropic purposes, may be erected and maintained, provided that the locations therefor and the design, erection and maintenance of such buildings be approved by the owner or owners of a majority of the lots shown upon the plot of Westover Hills hereto annexed; and subject further to the approval of the property owners on each side and immediately opposite the proposed site, and then only provided there has been filed in the office for the Recording of Deeds, in and for New Castle County, Delaware, a deed or other instruments in writing executed by the parties herein mentioned, approving specifying and limiting the uses to which such building may be put; and subject further to all other limitations, restrictions or conditions herein contained."

Right to modify restrictions is contained in the following paragraph:

"The covenants, agreements, conditions, reservations, restrictions and charges created and established herein for the benefit of said Westover Hills and each lot therein may be waived, abandoned and terminated, modified, altered or changed as to the whole of said tract or any portion thereof with the written consent of the owners of seventy-five per centum of the lots contained in Westover Hills; and in case only a portion of said tract is intended to be affected, the written consent of the owners of seventy-five per centum of the lots in the portion to be affected shall also be secured. No such waiver, abandonment, termination, modification or alteration shall become effective until the proper instrument in writing shall be executed and recorded in the office of the Recorder of Deeds for New Castle County, Delaware; provided that this Article shall have no application so long as the party of the first part shall be the owner of sixty-five per centum of the lots in said tract."

The right to enforce restrictions is given by these words:

"Right to Enforce

"The provisions herein contained shall run with and bind the land and shall inure to the benefit of and be enforceable by the party of the first part of the owner of any land included in said tract, their respective legal representatives, heirs, successors and assigns, and failure by the party of the first part or any land owner to enforce any restrictions, condition, covenant or agreement herein contained shall in no event be deemed a waiver of the right to do so thereafter as to the same breach or as to one occurring prior or subsequently thereof."

Every pertinent part of this deed clearly limits its effect to the land therein described, to wit, Section A. Again and again, the deed designates a specific area (now known as Section A) as a determinant of the application and operation of the various provisions concerning restrictions. The deed expressly creates a neighborhood scheme for a specific neighborhood which it describes. Nothing contained in it even suggests an intent to create a neighborhood scheme covering the entire 640 acres or any part thereof other than the section specifically described. We agree with the Vice-Chancellor that this conveyance evidences an explicit intent to create restrictions applicable only to Section A and for the benefit of property owners in that section alone.

The next instrument containing restrictive covenants is the deed of October 30, 1928 for Section A Extension. In general, the restrictions here imposed are similar to those of Section A. The paragraph following the *habendum* and *tenendum* ends in this manner: "which said covenants, agreements, conditions, easements, reservations, restrictions and charges are hereby imposed for the equal benefit of each lot shown by the plot of Westover Hills Section A Extension hereto annexed." Article X of this conveyance is cited by the individual defendants as tending to show an intent to extend the benefits of the restrictions to the other sections of Westover Hills. This article reads as follows:

"The property acquired by the said Delaware Land Development Company from William duPont located in Christiana Hundred is to be known as Westover Hills and for the purpose of maintaining said Westover Hills and in particular Section A Extension thereof in good order and conditions and for the purpose of providing for the cutting of sidewalk lawns, gathering of leaves and removal of snow from side walks, street lighting, etc., a service corporation is to be organized to be known as "Service Corporation of Westover Hills" or by some other similar name, whose members shall be lot owners of Westover Hills and the conditions of membership therein shall be such as may be set forth in this agreement and any other agreements respecting other parts of Westover Hills, when and as the same may be opened for development and likewise such as are set forth in the Certificate of Incorporation of the said corporation.

"The purchaser of any lot of land comprised in Section A Extension by the acceptance of a deed to said land, is obligated and does bind himself, themselves, their and each of their heirs, successors or assigns to become a member of the said Service Corporation and to be bound by all of its rules and regulations and shall be subject to all the duties and obligations imposed by membership in said corporation.

"The said Service Corporation shall, when established as hereinafter provided, assess the property owners of each lot a tax according to the number of feet which the lots of said owners shall extend along or abut upon streets or lanes in said tract with a minimum charge of Five Dollars per annum. Said assessment shall be made by the members of the Service Corporation and may be fixed at one time for one year or for such number of years as may be determined upon.

"In case of lots abutting upon two or more streets, the assessment shall be based upon a frontage not in excess of one-half of the aggregate street frontage of such lot. The Service Corporation however shall not be organized, nor shall the obligations of the owners with respect thereto, arise until at least five residences shall have been completed and occupied in said Westover Hills, Section A Extension."

Omitting Article X from this deed, we have again an explicit limitation of benefit to the area included in the deed. Wherein does Article X conflict with that expressed limitation? According to the individual defendants the words "the property acquired by the said Delaware Land Development Company from William duPont located in Christiana Hundred is to be known as Westover Hills" show for the first time in any deed not only an intent to develop all of the original tract (except those portions previously sold to Ethel duPont and Alice Ortiz and the portion leased to Wilmington Country Club) but also evidence an intent to create a uniform residential plan for the entire area. We cannot agree that the article should be so interpreted. It may and probably does show an expectation of developing the rest of the land, the entire area to be known as Westover Hills. We do not conceive that it suggests in any way a *uniform* plan of development or that it indicates a purpose of creating reciprocal easements throughout all sections. Actually, the Article pretends to deal with a service corporation, defining its purpose and the method of securing its funds, and requiring all lot owners to be members thereof. Nothing in this article conflicts with the explicit wording found elsewhere in the deed limiting these restrictions and the benefit thereof to the lands therein conveyed.

What has been said herein with reference to Section A Extension is equally applicable to Sections B, C and D. The restrictions imposed upon them are substantially the same as those in Sections A and A Extension, and the instruments by which they were imposed are similar in form to the deed for A Extension. The same thought is applicable to Barton Circle and Block O.

Considerable space in the briefs is devoted to the sig-

nificance of that article in the deeds which permits seventy-five percent of the owners of a given section to modify or terminate restrictions. This article is more nearly consistent with a section-by-section development than an overall restrictive scheme. If the latter plan were the developer's purpose, one would ordinarily expect to find a requirement that a specified percentage of owners in *all* sections must consent.

It is argued that the wording of the various conveyances does not prevent the extension by implication of the benefit of the restrictions to lot owners in other sections because the deeds do not expressly say that the restrictions are limited only to the area covered by each deed. This argument overlooks the settled policy of the law which favors the free use of land and which places the burden of establishing the existence and the right to the benefit of a restriction upon him who asserts it. 14 *Am. Jur.* 621, 670. Compare *Gibson v. Main*, 14 *Del. Ch.* 449, 129 *A.* 259.

To summarize, we find in each instrument by which restrictions were imposed upon the various sections of Westover Hills a definite statement of the area bound by the restrictions and a definite limitation of the benefit of those restrictions to the lots in that area. This is true of Section D as well as those sections previously developed. We agree with the Vice-Chancellor that these instruments clearly show an explicit intent not to create a uniform system of reciprocal easements applicable to all sections but to develop a series of independent sections, each having its own restrictions benefiting only the lands in that section.

In view of his interpretation of the deeds, the Vice-Chancellor held that the evidence produced by the individual defendants was not admissible to vary the language therein contained. The individual defendants concede that parol testimony is not available, if that interpretation is correct. In any event, we have carefully examined the evidence submitted at the hearing and the additional evidence offered

in support of the motion for new trial. Much of it consists of plots taken from the developer's private files which had never been exhibited to the public prior to the hearing. Some of it consists of newspaper articles, one of which was based upon an interview in August 1926 with Mr. MacComb, who was then president of Development. Some of it was newspaper advertisements for the sale of lots published over Development's name. If we concede the admissibility of all the evidence, we would be constrained to say that its combined weight is insufficient to overbalance the clear, definite and solemn provisions of the instruments themselves as construed by us. This is particularly manifest when we remember that both before and during the time when the implied restrictive scheme is alleged to have been going through the process of growth, the original grantor sold several large and small quantities of land out of the original tract free of all restrictions, or, in some instances, free of most of them.

The deed whereby restrictions were imposed upon Section D is similar in all important respects to those involving A Extension, B and C. We agree with the court below that the burden and the benefit of the restrictions upon Section D is limited to that section. In Article VI of this deed, which deals with the right to alter or terminate restrictions by consent of seventy-five percent of the lot owners, there is a sentence to the effect that this article shall not apply so long as "party of the first part" shall be the owner of sixty-five percent of the lots in said tract. It is contended by the individual defendants that the quoted words should read "party of the second part." It is not necessary to decide whether this construction is correct; since all present owners, the prospective vendee, and the creator of the restrictions have agreed upon the modification or termination, no one else can object.

The decree of the court below will be affirmed.