LEON N. WEINER & ASSOCIATES, INC., Plaintiff Below, Appellant,

v.

Earl D. KRAPF and Donald T. Ziesel, Defendants Below, Appellees,

and

Paul A. Bradley, Karen A. Bradley, Michael Coupe and Nancy Coupe, Intervenor Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Feb. 2, 1993.
Decided: May 5, 1993.

Kevin Gross of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for appellants. Harold R. Berk of Pepper, Hamilton & Scheetz, Philadelphia, PA.

John H. Benge, Jr. of Allmond, Eastburn & Benge, Wilmington, for appellees.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The plaintiff-appellant, Leon N. Weiner & Associates, Inc. ("Weiner"), is the owner of a parcel of land which was once operated as a quarry ("Quarry Parcel"). The Quarry Parcel adjoins a subdivided residential community in New Castle County, Delaware (the "Numbered Lots"), known as North Hills Section C. The defendants-appellees, Earl D. Krapf and Donald T. Ziesel (collectively "Krapf" [1]), each own one of the Numbered Lots.

Weiner sought a declaratory judgment and injunctive relief from the Court of Chancery. Krapf sought reciprocal affirmative relief. The issue presented to the Court of Chancery was whether certain uniform deed restrictions, individually imposed by a common grantor over time upon each of the Numbered Lots of a residential housing development, apply by implication to the adjacent unsubdivided Quarry Parcel, notwithstanding the common grantor's failure specifically to include such deed restrictions when the Quarry Parcel was conveyed. The Court of Chancery held that the Quarry Parcel is implicitly burdened by the restrictive covenants contained in the deeds of the Numbered Lots, denied Weiner's request for relief, and entered a declaratory judgment in favor of Krapf. Weiner appeals from that final judgment.

We have concluded that the Court of Chancery's holding was erroneous as a matter of law. Consequently, the final judgment of the Court of Chancery is re- versed. This case is remanded to the Court of Chancery with directions to grant Weiner's application for declaratory and injunctive relief and to enter a judgment in favor of Weiner.

*Facts*

The facts were set forth by the parties in a pretrial stipulation and order. Those facts have been recited in a prior opinion by this Court. *Leon N. Weiner & Assoc. v. Krapf,* Del.Supr., 584 A.2d 1220 (1991) (Weiner I). The relevant substantive facts are recounted here since this Court's prior opinion did not reach the merits of the parties' positions.

George B. Booker and Company ("Booker"), as the owner, created and developed a residential community known as North Hills in Brandywine Hundred, New Castle County, Delaware. North Hills was initially comprised of Sections A and B. The plan which reflected the subdivided lots and streets of Section A and B was recorded in 1936 in the New Castle County Recorder of Deeds' Office.

North Hills was subdivided further when Booker recorded the plan for Section C on February 24, 1942 in Plat Book Volume 1, Page 15 (Appendix). The recorded plan of Section C depicts streets, 34 numbered building lots, and 2 small unnumbered parcels (less than $4/10$ths of an acre each) fronting on Washington Boulevard.

The recorded plat of Section C also reflects an unsubdivided tract of 2.15 acres, which was then an existing quarry ("Quarry Parcel"). The Quarry Parcel is identified on the recorded plat of Section C only by lines which form an irregular oval and the phrase "top edge of quarry." The Quarry Parcel did not abut upon any street, lane or avenue.

Between 1942 and 1963, the developer, Booker, sold 31 of the 34 Numbered Lots in Section C to various purchasers. Although there is no mention of restrictions on the

---

1. The persons who intervened in the Court of Chancery as defendants did not participate in this appeal.

recorded plat plan of Section C, each of the 31 deeds contained substantially the same restrictive covenants, which stated *in part:*

UNDER AND SUBJECT, nevertheless, to the following covenants, agreements, conditions, restrictions, etc., which it is hereby agreed shall be covenants running with the land and shall be binding upon the parties of the second part, their heirs and assigns:

USE OF LAND

The land in the entire North Hills Tract shall be used for residential purposes only and no building of any kind whatsoever shall be erected or maintained thereon except private, single or semi-detached dwelling houses, and private garages for the sole use of the respective owners or occupants of the plots upon which such are erected.

On August 26, 1963, the Quarry Parcel, as shown on the recorded plat of Section C, North Hills, was conveyed by Booker to Franklin Industries, Inc., Weiner's predecessor in title. Significantly, that Quarry Parcel deed did not contain a restriction limiting it to "single or semi-detached dwelling houses." Instead, the deed from Booker to Franklin Industries for the Quarry Parcel *only* contains the following restriction:

SUBJECT also to the restriction and covenant running with the land that none of said tract will be used or maintained for any quarrying operations and said land shall be limited strictly to residential uses and purposes.

All of the land set forth on the North Hills' Plots (Sections A, B and C) were eventually conveyed by Booker. The deeds to all of the lands shown on the North Hills plots, except the deed to the Quarry Parcel, contain substantially the same extensive restrictive covenants, including the "single or semi-detached dwelling" restriction.[2]

Weiner has owned the 2.15 acres of undeveloped land, known as the Quarry Parcel, since 1967. In 1987, Weiner prepared a development plan for the Quarry Parcel. This plan proposed the construction of an eighty-four (84) unit apartment building. Prior to filing any applications, Weiner presented the 1987 plan to Krapf and the other neighbors. Krapf's attorney advised Weiner that the 1987 plan was unacceptable to the neighbors and would be opposed on the basis that the Quarry Parcel was implicitly burdened by the restrictive covenants set forth in the deeds to the Numbered Lots.[3]

### Procedural History

Weiner sought a declaratory judgment from the Court of Chancery that the Quarry Parcel is subject only to the deed restriction specifically contained within its chain of title and, therefore, that the Quarry Parcel is not implicitly subject to the restrictions binding the remaining lands comprising Sections A, B and C of North Hills. Weiner also sought to enjoin the enforcement of those restrictions against the Quarry Parcel by either Krapf or any members of a proposed defendant class consisting of all the owners of each of the numbered parcels of real estate in Sections A, B and C of North Hills.

Following the parties' entry into a stipulation of uncontested facts, Weiner filed a motion in the Court of Chancery to certify a defendant class, comprised of all owners of the subdivided residential lots of North Hills, and that Krapf be designated as the defendant class representative. Krapf opposed Weiner's complaint for declaratory

2. Subsequent to the conveyance of the Quarry Parcel, the three remaining Numbered Lots in Section C were sold with the same restrictive covenants that were set forth in the deeds to the 31 numbered building lots, including the "single or semi-detached dwelling houses" restriction. The two small parcels of land fronting on Washington Boulevard, not shown as Numbered Lots on the original plan, were sold prior to 1963 with the same restrictive covenant in those deeds.

3. In 1976, Weiner prepared a plan to construct a fifty-six (56) unit multi-family apartment building on the Quarry Parcel. Weiner applied for certain zoning variances in connection with that proposed development. Krapf and other neighbors opposed Weiner's application. The basis for that opposition was the contention that the Quarry Parcel is implicitly subject to each of the restrictions contained in the deeds for the Numbered Lots. As a result of the dispute, Weiner's 1976 plan was abandoned.

judgment and injunctive relief on the merits, as well as Weiner's motion for defendant class action certification. Alternatively, in the event that Weiner's request for a defendant class certification was granted, Krapf sought a counter-affirmative declaratory judgment ruling that the restrictive covenants binding all of the subdivided lots of North Hills, Sections A, B and C, applied by implication to the Quarry Parcel and, therefore, barred Weiner's proposed development of multi-family residential apartment buildings on that site.

The Court of Chancery denied Weiner's motion for defendant class certification. It also denied Weiner's request for a declaratory judgment and injunctive relief. The Court of Chancery then granted Krapf's counter-application for an affirmative declaratory judgment. Following entry of a final order, Weiner docketed an appeal to this Court.

This Court reversed the order denying Wiener's motion for defendant class certification, vacated the declaratory judgment in favor of Krapf's position on the merits, and remanded the matter to the Court of Chancery. Weiner I. On remand, the Court of Chancery certified the defendant class. Thereafter, it denied Weiner's request for declaratory relief and granted Krapf's reciprocal request for such relief, once again holding that the Quarry Parcel was implicitly subject to the restrictions contained in the deeds for the Numbered Lots. Weiner filed a notice of appeal on September 28, 1992.

### Burden of Proof Restrictive Covenants' Existence

■ There are two general methods of establishing the operative existence of a restrictive covenant. The first is by explicit written language of the intent of the grantor and the grantee to create a restrictive covenant in the deed of conveyance or another recorded document, e.g., a declaration of restrictions. *Jackson v. Richards*, Del.Ch., 26 Del.Ch. 260, 27 A.2d 857, 860 (1942). The second is by implication and is usually ascertained from a common plan of development. *Id.*

■ This Court has recognized the well-settled legal policy which favors the free use of land. *Gammons v. Kennett Park Development Corporation*, Del.Supr., 30 Del.Ch. 525, 61 A.2d 391, 397 (1948). Accordingly, the burden of establishing the existence of and the right to benefit from a restrictive covenant is placed upon the person who asserts its protection. *Id.* Therefore, in this case, Krapf was required to prove that the use of the Quarry Parcel had been restricted to private, single or semi-detached, residential dwellings.

### Explicit Restrictions Differ Numbered Lots/Quarry Parcel

The record reflects that "there are no restrictions on development stated on the plot plan for North Hills, Section C, and there is no 'blanket' Declaration of Restrictions on record with regard to the North Hills Subdivision, Section C." However, the record also reflects that each of the out conveyances from Booker, the original developer of North Hills, including the Numbered Lots in Section C, expressly contains, or incorporates by reference, numerous covenants and restrictions ("the Numbered Lot restrictions") in the same or substantially the same language. Included in every deed to the Numbered Lots is a restriction on "use of land", which states in part:

> The land in the entire North Hills tract shall be used for residence purposes only and no building of any kind whatsoever shall be erected or maintained thereon except private, single or semi-detached dwelling houses and private garages for the sole use of the respective owners or occupants of the plots upon which such are erected.

In 1963, Booker deeded the Quarry Parcel to Weiner's predecessor in title without the Numbered Lot restrictions and subject *only* to the following use restriction:

> SUBJECT also to the restriction and covenant running with the land that none of said tract will be used or maintained for any quarrying operations and said land shall be limited strictly to residential uses and purposes.

Consequently, the stipulated record reflects that the restrictive covenants imposed by Booker upon the Quarry Parcel and the Numbered Lots limited the development of those properties to residential purposes.

However, the record also reflects that the restrictive covenant imposed by Booker upon the Numbered Lots *further limited* the type of residential use to "private, single or semi-detached dwelling houses...." Thus, the restrictive covenants imposed by Booker in the deeds to the Numbered Lots are more narrowly tailored then the restriction Booker placed upon the Quarry Parcel. The former restrictions specifically circumscribe the type of residential use allowed.

The Court of Chancery found that there was no evidence to support a contention that the use of the Quarry Parcel is *explicitly* restricted to "private, single or semi-detached, residential dwellings." That finding is supported by the record. It is not challenged by Krapf in this appeal.

### Implied Restrictive Covenant

The Court of Chancery determined that the deed to the Quarry Parcel did not *specifically* impose the "private, single or semi-detached dwelling house" restrictive covenant use. Therefore, according to the Court of Chancery, if that restriction binds the Quarry Parcel it must arise by implication from the restrictions imposed in the deeds to the Numbered Lots. We agree.

The question of whether there has been an implicit imposition of a restrictive covenant is an issue of fact, to be determined from the circumstances presented in each case. In some situations, where an owner lays out a tract of land into building lots, records it as a subdivision plat, and sells to various purchasers, inserting the same or similar covenants in all of the deeds, an intent to benefit all the land in the tract and to induce purchases thereby may be inferred. *Jackson v. Richards*, 27 A.2d at 859. Under such circumstances, the theory is that reciprocal rights

are intended to be given. Accordingly, one grantee may usually enjoin a breach of such restrictions. *Id.* Conversely, this Court has held:

> There is no legal reason why a developer cannot develop successive portions of his lands independently of one another, imposing different restrictions (or none at all) upon each, provided the deeds clearly evidence the explicit intent to limit the burden and the benefit to the designated area or definitely show an intent not to impose similar restrictions upon all.

*Gammons v. Kennett Park Development Corporation,* 61 A.2d at 394.

The factual determination of an intention to implicitly impose a general plan of development must begin, necessarily, at the time the subdivision was first recorded and, thereafter, as lots were sold. 5 *Powell on Real Property,* 1989 at 671 (citing *Rieger v. Wessel,* Ky., 319 S.W.2d 855 (date omitted)). The recorded plan of Section C depicts streets [4], 34 Numbered Lots, and 2 small unnumbered parcels (less than 4/10ths of an acre each) fronting on Washington Boulevard. The recorded plat of Section C also reflects an unsubdivided tract of 2.15 acres, the Quarry Parcel, which was an existing quarry at that time.

The contrast between the Numbered Lots and the Quarry Parcel on the recorded plot are consistent with the parties stipulation that, when the subdivision plan for Section C was recorded, the Quarry Parcel "was a quarry." The Quarry Parcel consisted of a large dugout area. As a result of prior digging, the ground level of the Quarry Parcel was below that of the adjoining Numbered Lots by approximately thirty to forty feet.

The recorded plat for North Hills Sections C is graphic contemporaneous evidence which illustrates the difference between Booker's contemplated plans to develop the land which was subdivided into Numbered Lots and the absence of such a plan for the Quarry Parcel. The recorded

---

4. The recorded plan contained a "Certificate of Ownership" stating "It is hereby certified that the undersigned are the owners of the land shown on this Plan and that such streets, lanes, and avenues as are hereon shown, are dedicated for the general use of the traveling public and for the use of the abutting property owners."

plat for Section C reflects that the Quarry Parcel was not subdivided into building lots with setback lines. Unlike the Numbered Lots depicted on the recorded plat for Section C, the Quarry Parcel is not shown as bordering on a street. Although the recorded plat for Section C sets forth boundaries with courses and distances for the Numbered Lots, there are not even parameter dimensions for the 2.15 acre Quarry Parcel, which is only depicted as an irregular oval. The only reference on the recorded plat of Section C which relates to the Quarry Parcel is the notation "top edge of quarry." Consequently, the recorded plat of Section C does not implicitly reflect a common plan of development for the Quarry Parcel and the Numbered Lots.

If the development of the Quarry Parcel is not implicitly restricted by the recorded plat of Section C, the question then becomes whether the Quarry Parcel is implicitly restricted by the covenants set forth in the deeds to the Numbered Lots. Booker sold thirty-one (31) of the Numbered Lots in Section C prior to the conveyance of the Quarry Parcel to Weiner's predecessor in title, Franklin Industries, Inc. In each of the deeds to the first 31 Numbered Lots, Booker included a restriction limiting development of the Numbered Lots to single or semi-detached dwelling houses and private garages. However, each of the deeds from Booker for the Numbered Lots in North Hills Section C expressly contains or incorporates by reference *additional* covenants, agreements, conditions, and restrictions which had been imposed upon Sections A and B, by the same or substantially the same language:

> UNDER AND SUBJECT, nevertheless, to the following covenants, agreements, conditions, restrictions, etc., which it is hereby agreed shall be covenants running with the land and shall be binding upon the parties of the second part, their heirs and assigns:

USE OF LAND

The land in the entire North Hills tract shall be used for residence purposes only and no building of any kind whatsoever shall be erected or maintained thereon except private, single or semi-detached dwelling houses, and private garages for the sole use of the respective owners or occupants of the plots upon which such are erected.

APPROVAL OF PLANS

No building, fence, wall, or other structure shall be commenced, erected or maintained, until the plans and specifications, showing the nature, kind, shape, materials, floor plans, location and approximate cost of such structure shall have been submitted to and APPROVED IN WRITING by the party of the first part or his assigns. The party of the first part shall have the right to refuse to approve any such plans or specifications which are not suitable or desirable, in its opinion, for aesthetic or other reasons; and in so passing on such plans it shall have the right to take into consideration the suitability of the proposed building or other structure and of the materials of which it is to be built, to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure, as planned, on the out-look from the adjacent or neighboring property.

SETBACK

No building or part thereof, except as hereinafter provided, shall be erected or maintained on any part of the North Hills tract closer to any **STREET***** on which the plot upon which such building is erected, abuts, than thirty-five feet from the **BUILDING LINE.***** Corner properties must show a side street setback of twenty-five feet. A **SETBACK***** of thirty-five feet from the **BUILDING LINE***** shall be maintained in all lots fronting or abutting on Washington Boulevard. (*****denotes emphasis added).

PORCH

Unenclosed covered porches, the floors of which are not higher than the level of the first floor of the building, may encroach on such restricted areas by projecting thereon not more than five (5) feet.

Enclosed porches, or unenclosed porches carrying second floor construction, or

any porch which may be covered by any portion of the main roof shall encroach on this **SETBACK**˙ not more than five feet.

No house nor any part of it, including bay windows, or porches shall be erected closer than ten feet from any side or rear **BUILDING LINE,**˙ nor shall any structure of any kind be erected closer than five feet to a rear or side line. (˙denotes emphasis added).

GARAGES

A garage shall not be erected within sixty (60) feet of any front **STREET,**˙ unless it be made a part of or be attached to or connected with the main building on the **PLOT,**˙ nor to within forty (40) feet of the **ROAD**˙ where side lines abut on other roads. (˙denotes emphasis added).

ROOFS and ROOFING

Roof construction of buildings erected for use as dwellings or as garages shall be of more than one pitch, the garages on the plots to be of an architectural design conforming to that of the dwelling.

Slate, tile or wood shingles to be used. Rubberoid or composition roofing is not permitted.

NUISANCES

There shall not be erected, permitted, maintained or operated upon any of the land included in said deed any foundry, **QUARRY,**˙ graveyard, hospital, sanitarium or institution of like or kindered nature, stable of any kind, cattle yard, hog pen, fowl yard or house, cesspool, privy vault or any form of privy, nor any plant or manufacturing establishment of any kind, nor billboard, nor any noxious, dangerous or offensive thing, trade or business whatsoever, nor shall any public garage or gas filling station be maintained, nor live poultry, hogs, cattle or other live stock be kept thereon ... (˙denotes emphasis added).

SANITATION

The party of the second part agrees to construct at his expense a septic tank sewage disposal on his **RESPECTIVE PLOT** * with overflow drainage tile laid in cinder trench, etc., as required by the State Board of Health rules or make proper connection to the Public Sewer where such is installed. (˙denotes emphasis added).

EASEMENTS

Easements and rights of way are hereby expressly reserved in and over the rear five (5) feet of **EACH LOT,**˙ such easements and rights of way to be for the following purposes:

Erection, construction and maintenance of poles, wires and conduits, and the necessary attachments in connection therewith for the transmission of electricity and for telephone and other purposes.

For the construction and maintenance of storm water drains, land drains, public and private sewers, gas, water or heat pipes, etc.

The party of the first part shall have the right to enter upon the said reserved strips of land for any of the purposes for which said easements and rights of way are reserved. (˙denotes emphasis added).

RIGHT TO ENFORCE AND ABATE VIOLATIONS

Violation of any restriction or condition or breach of any covenant or agreement herein contained shall give the party of the first part, in addition to all other remedies, the right to abate and remove at the expense of the owner thereof, any erection, thing or condition that may be or exist thereon contrary to the intent and meaning of the provisions thereof, and the party of the first part shall not thereby be deemed guilty of any manner of trespass for such entry abatement or removal.

Thus, unlike the single restriction in the deed to the Quarry Parcel, all of the deeds to the first 31 Numbered Lots in Section C which were conveyed by Booker contain other restrictions with regard to: type and use of development; approval of plans; setbacks; requirements for porch construction, garages and roof construction; limitations against certain nuisances; sanitation requirements; utility easements and enforcement rights.

■ There is no implicit indication in the detailed restrictions which were imposed by Booker upon the Numbered Lots that the Quarry Parcel was to be restricted in the same manner as the Numbered Lots. In fact, the impossibility of imposing the Numbered Lot restrictions upon the Quarry Parcel is made readily apparent from even a partial review of the Numbered Lot restrictions. The setback restrictions in the deeds to the Numbered Lots are predicated upon the existence of a building line and a street, neither of which can apply to the Quarry Parcel. Similarly, the permissible parameters of constructing a porch or garage on a Numbered Lot are also circumscribed by their proximity to a building line or a street. Utility easements are specifically reserved over the rear five feet of *each lot.*

Moreover, a quarry is one of the uses, characterized as a nuisance, which is not permitted by the deed restrictions imposed upon the Numbered Lots. This is consistent with giving the owner of a Numbered Lot notice that the "top edge of the quarry" on the recorded plot could not be extended onto any Numbered Lot. However, implicitly imposing that prohibition upon the Quarry Parcel would be inconsistent with the fact that the Quarry Parcel was an existing quarry when Booker started to convey the Numbered Lots. If the Numbered Lot restrictions implicitly applied to the Quarry Parcel, the illogical result would be that the first grantee of a Numbered Lot could have immediately enjoined its use as a quarry. *See Gibson v. Main,* Del.Supr., 14 Del.Ch. 449, 129 A. 259 (1925).

This case is analogous to the factual pattern presented to then Chancellor Sietz in *Bave v. Guenveur,* Del.Ch., 36 Del.Ch. 48, 125 A.2d 256 (1956). In *Bave,* the issue was whether certain restrictive covenants implicitly applied to a particular section of Westover Hills. The Chancellor held that the developer was free to develop the various portions of the area known as Westover Hills as it saw fit, subject to whatever restrictions it desired to impose, if any. *Id.* 125 A.2d at 258. Chancellor Sietz held that the language of the deeds to lots in Block O of Westover Hills, when read in conjunction with the recorded plot, made the intended scope of the restrictions clearly evident to the reasonable reader. *Id.* at 258–59.

■ Similarly, the language to the deeds in the Numbered Lots in Section C of North Hills, when read in conjunction with the recorded plot, made the intended scope of the restrictions clear to the reasonable reader. The recorded plot of North Hills Section C and the restrictive covenants imposed upon the Numbered Lots, whether read separately or in conjunction with one another, do not establish an intention by the developer to implicitly impose the Numbered Lot restrictions upon the Quarry Parcel. Therefore, when the original developer, Booker, conveyed the Quarry Parcel to Weiner's predecessor in title (Franklin Industries, Inc.) it was free to impose whatever restrictions, if any, it desired. *Id.*

This case is also analogous to the factual circumstances reviewed by this Court in *Gammons v. Kennett Park Development Corporation,* Del.Supr., 30 Del.Ch. 525, 61 A.2d 391 (1948). In *Gammons,* this Court held that "there is no legal reason why a developer cannot develop successive portions of his lands independently of one another, imposing different restrictions (or none at all) upon each, provided the deeds clearly evidence the explicit intention to limit the burden and the benefit to the designated area." *Id.* 61 A.2d at 394. The deeds by which the restrictions were imposed upon Section C of North Hills reflect an unambiguous intention to impose them only upon the Numbered Lots. *Id.* This is true of Section C as well as those Sections A and B, which had previously been developed by Booker.

The settled policy of the law favors the free use of land. *Gammons v. Kennett Park Development Corporation,* 61 A.2d at 397. Krapf has failed to carry his burden of establishing, by clear and convincing evidence, the existence and right to benefit from an implicit imposition of the Num-

bered Lot restrictions upon the Quarry Parcel. *Id.* Therefore, we hold that the Quarry Parcel is not implicitly subject to the restrictive covenants contained in the deeds to the Numbered Lots.

## Conclusion

The judgment of the Court of Chancery is REVERSED. This matter is REMANDED to the Court of Chancery, with the direction to enter a final judgment which grants Weiner's application for a declaratory judgment and injunctive relief.

Notation on Plot:
TOP EDGE OF QUARRY

BLOCK MAP No. 51
OFFICIAL STREET PLAN 14
**NORTH HILLS**
SECTION "C"
BRANDYWINE HD.    NEW CASTLE Co.
**DELAWARE**

CERTIFICATE OF OWNERSHIP

CERTIFICATE OF ENGINEER

A-106

AB00000096