COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  September 19, 2019
Draft Report:
Date Submitted:   September 13, 2019

Edward J. Fornias, III, Esquire
Law Office of EJ Fornias, P.A.
615 W. 18th Street, Lower Level
Wilmington, DE 19802

William J. Rhodunda, Jr., Esquire
Rhodunda Williams & Kondraschow
Brandywine Plaza West
1521 Concord Pike, Suite 205
Wilmington, DE 19803

RE:   *Newells Creek Homeowners Association v. Tami Wygant and Mark Wygant*
        C.A. No. 12558-MG

Dear Counsel:

Pending before me is a motion for summary judgment filed by a homeowners' association in an action seeking a declaratory judgment that a property in the community is subject to covenants or deed restrictions, and must pay annual assessments imposed by the association, under the common plan doctrine.  The association argues that the property owners had constructive notice of the covenants, paid assessments for years, or that one of the owners served on the association's board of directors.  The property owners respond by denying that

their property is bound by the covenants, and that there is a common plan in the community that encompasses their property. They claim any payments of assessments were made in error and the owner did not serve on the board. I recommend that the Court deny the motion for summary judgment because there are material issues of fact in dispute. This is a final report.

## I. Background

On August 29, 2003, Newell's Creek Developers, LLC purchased lands constituting the lots in Phase 1 of the Newell's Creek Subdivision ("Newell's Creek" or "development"), which is located in Camden-Wyoming, Delaware.[1] On May 24, 2004, Newell's Creek Developers and Ryland Group, Inc. (collectively, "Developers") executed and recorded a Declaration of Restrictions ("Declaration") for Newell's Creek, which specifically included only the Phase 1 lots for the development.[2] Those lots, along with lots in Phases 2 and 3 of the development, were shown on the Record Subdivision Plan for Newell's Creek ("Plan"), which was recorded on January 10, 2002.[3] The Declaration provided that it binds all lots owned by the Developers on the date the Declaration was recorded and all other lots in Newell's Creek "as to which the owners thereof have joined by separate

---

[1] Docket Item ("D.I.") 18, Ex. 4.

[2] *Id.*, Ex. 5.

[3] *Id.*, Ex. 3.

writing."[4]  On March 11, 2005, Newell's Creek Developers purchased the lots for Phase 2 of Newell's Creek, and on November 1, 2005, it deeded those lots to Ryland Group.[5]  On March 13, 2006, Defendants Mark and Tami Wygant (collectively, "Wygants") purchased lot #116 in Newell's Creek, or 278 Newells Creek Drive, which was part of Phase 2 of Newell's Creek, from Ryland Group.[6] Their deed did not indicate that the property was conveyed subject to covenants in the Declaration.

Plaintiff Newell's Creek Homeowners Association, Inc. ("Association")[7] levied annual assessments on Newell's Creek properties, which the Wygants paid from 2006 through 2012.  Beginning in 2013, the Wygants refused to pay the annual assessments levied by the Association, claiming that their property is not bound by the Declaration, they are not members of the Association and are not obligated to pay the assessments.

This matter has a long history in several Delaware courts.  On April 26, 2013, the Association filed a debt action in the Justice of the Peace ("JP") Court against the Wygants seeking to collect the unpaid annual assessment.[8]  On August

---

[4] *Id.*, Ex. 5, Art. VIII.

[5] *Id.*, Ex. 6; D.I. 25, Ex. 28.

[6] D.I. 18, Ex. 2.

[7] The Association was incorporated on January 22, 2007. *Id.*, Ex. 1.

[8] D.I. 25, Ex. 2.

1, 2013, after trial, the JP Court found in favor of the Association and ordered the Wygants to pay the assessment.[9] The JP Court decision was appealed to the Court of Common Pleas ("CCP") on August 14, 2013 and, eventually, CCP determined, on May 18, 2016, that it lacked jurisdiction to dispose of the equitable issues in the case and ordered the case transferred to this Court under 10 *Del. C.* § 1902.[10]

On July 14, 2016, the Association filed a complaint in this Court seeking a permanent injunction and declaratory judgment that the Wygants' property is bound by the Declaration; that the Wygants be ordered to pay $184.36 for the 2013 annual assessment, interest, fees and costs related to the JP Court action; and that the Wygants are liable to the Association in quantum meruit.[11]

On September 2, 2016, the Wygants filed an answer and counterclaim.[12] They argue that the Declaration is applicable only to the lots in Phase 1 of the Newell's Creek development; deny that the Wygants had actual or constructive notice that the property was subject to the Declaration or that the common plan

---

[9] The JP Court found that, by purchasing a home in Newell's Creek with knowledge that their lot was included in the Plan, the Wygants had constructive notice through the common plan doctrine that they would be required to adhere to the covenants in the Declaration, despite the fact that their deed did not contain language relating to the Plan. *Id.*, Ex. 6. The JP Court order was amended on August 8, 2013, to add attorney's fees to the judgment amount. *Id.*, Ex. 8.

[10] *Id.*, Ex. 10, 26.

[11] D.I. 1. The complaint filed in this Court does not indicate the case is being transferred under 10 *Del. C.* § 1902.

[12] D.I. 4.

doctrine applies; and claim that the Wygants paid any assessment by mistake, under duress, threat of a sheriff's sale, and a reservation of rights, and that the Wygants' property is not under the auspices of the Association so it has received no benefit. In their counterclaim, the Wygants seek a declaratory judgment that the Declaration does not apply to their property, and that the Association has deliberately asserted bad faith claims and used the Declaration to extort assessments from the Wygants.

The Association denies the assertions in the counterclaim, claiming that Tami Wygant served on the board of directors for Newells Creek and her conduct – in enforcing the Declaration as a board member – estops the Wygants from asserting they are not members of the Association and are not subject to the Declaration.[13] Following discovery,[14] there was no activity in the case between April of 2018 and April of 2019.[15] On April 15, 2019, the Association filed a motion for summary judgment ("Motion") arguing that there are no material facts in dispute and the case can be decided as a matter of law under the common plan

---

[13] D.I. 9, ¶ 21.

[14] On October 10, 2017, the Association moved to compel the Wygants' attendance at their depositions. D.I. 10. The Court ordered the Wygants to make themselves available to be deposed and, when they failed to appear on the scheduled date, the Association filed a motion for sanctions. D.I. 14. Receiving no response to the motion from the Wygants, the Court ordered the Wygants to make themselves available for the depositions and pay attorneys' fees and costs. D.I. 15.

doctrine, since a general and uniform plan existed prior to the development, and the Wygants had constructive notice of the existence of a general building plan schedule prior to purchasing their lot.[16]   Further, the Association claims the Wygants paid all assessments from 2006 (when they took possession) until 2013, and that Tami Wygant's claim that she was not a board member is unsupported by the evidence.[17]

The Wygants' May 29, 2019 response to the Motion denies that the common plan doctrine applies and asserts that the clear and unambiguous language of the Declaration provides that, if a Newell's Creek lot is not specifically bound by the Declaration, then it is only bound if the owners join the Declaration by separate writing.[18]   And, there is no writing that subjects the Wygants' property to the Declaration. Accordingly, it is improper to consider extrinsic evidence of the Developers' intent.  And even if the Association's evidence is considered, it does not show the Developers' intent.

In its June 13, 2019 reply, the Association reiterates that the common plan doctrine, the Developers' intent to build out all of the lots as evidenced by the Plan,

---

[15] The Court issued a Rule 41(e) letter on April 2, 2019, indicating that the case will be dismissed for lack of prosecution unless a status report was filed within 15 days. D.I. 17.

[16] D.I. 18.

[17] *Id.,* ¶¶ 15, 16.

[18] D.I. 22.

and equity, support the enforcement of the Declaration against the Wygants.[19]

Additional information was requested from the Association and submitted on

September 13, 2019.

## II.    Standard for Review

Under Court of Chancery Rule 56, the court grants a motion for summary

judgment when "the moving party demonstrates the absence of issues of material

fact and that it is entitled to a judgment as a matter of law."[20]  The moving party

bears the burden of demonstrating that no material issues of fact are in dispute and

that it is entitled to judgment as a matter of law.[21]  Once the moving party has

satisfied that burden, it falls on the non-moving party to show that there are factual

disputes.  Evidence must be viewed "in the light most favorable to the non-moving

party."[22]  Summary judgment may not be granted when material issues of fact exist

---

[19] D.I. 23.

[20] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[21] *Wagamon*, 2012 WL 1388847, at *2; *Lundeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Aug. 31, 2006).

[22] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)).

or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[23]

### III. Analysis

The issue I consider is whether the covenants contained in the Declaration bind the Wygants' property under the common plan doctrine, as a matter of law. "[W]hile the law favors the free use of land and frowns on restrictive covenants, they are recognized and enforced . . . where the parties' intent is clear and the restrictions are reasonable."[24] A restrictive covenant can be established either "by explicit written language of the intent of the grantor and the grantee to create a restrictive covenant in the deed of conveyance or another recorded document, e.g., a declaration of restrictions," or by implication, which is "usually ascertained from a common plan of development.[25] To determine the parties' intent, the Court "look[s] to the plain meaning of the restrictive covenant."[26] "[C]ovenants restricting the free use of property must be strictly construed."[27] They "may be

---

[23] *Williams*, 671 A.2d at 1388-89 (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

[24] *Greylag 4 Maint. Corp. v. Lynch-James* ("*Greylag*"), 2004 WL 2694905, at *5 (Del. Ch. Oct. 6, 2004) (citation omitted).

[25] *Weiner & Assocs., Inc. v. Krapf* ("*Weiner*"), 623 A.2d 1085, 1088 (Del. 1993).

[26] *New Castle Cty. v. Pike Creek Recreational Servs. LLC*, 82 A.3d 731, 745 (Del. Ch. 2013), *aff'd,* 105 A.3d 990 (Del. 2014) (citation omitted).

[27] *Id.*, at 745-46 (citation omitted).

enforced against a purchaser only if he or she had notice, either actual or constructive, of their existence."[28]  Actual notice is "an awareness of the alleged restriction by the purchaser at the time of purchase."[29]  Constructive notice is "normally established by properly recording the instrument that contains the alleged restriction."[30]

The common plan doctrine uses the general plan of development (which Courts have also referred to as the substantially uniform residential plan) as a "proxy for constructive notice."[31]  Since implied covenants involve a "relaxation of the writing requirement," they are disfavored.[32]  The party asserting the common plan doctrine must show a common plan exists, by clear and convincing evidence, for an implied covenant to be found to burden all of the land in the plan area.[33] The existence of a common plan is "an issue of fact, to be determined from the circumstances of each case."[34] And, the factual determination of the parties' intent

---

[28] *Id.*, at 746; *Greylag*, 2004 WL 2694905, at *5 (citation omitted).

[29] *Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *8 (Del. Ch. Dec. 15, 2005) (citing *Greylag*, 2004 WL 2694905, at *5).

[30] *Id.*

[31] *See Greylag*, 2004 WL 2694905, at *5.

[32] *Capano v. Draper Subdivision Ass'n, Inc.*, 2019 WL 3938704, at *10 (Del. Ch. Aug. 20, 2019); *Greylag*, 2004 WL 2694905, at *5 (citation omitted).

[33] *Weiner*, 623 A.2d at 1088, 1092; *Greylag*, 2004 WL 2694905, at *5.

[34] *Greylag*, 2004 WL 2694905, at *5 (citing *Weiner*, 623 A.2d at 1089); *Jackson v. Richards*, 27 A.2d 857, 859 (1942) ("Whether [there was] a general and uniform plan of

"to implicitly impose a general plan of development must begin, necessarily, at the time the subdivision was first recorded and, thereafter, as lots were sold."[35]  Courts consider whether similar covenants are inserted in all, or most, of the deeds as "strong evidence of the grantor's intent."[36]

To grant summary judgment in this instance, I must find that there are no material issues of fact and, as a matter of law, the Association has shown, by clear and convincing evidence, the existence of a common plan making the Declaration enforceable against the Wygants' property. In other words, I must conclude that the Wygants either had actual notice of the covenants, or that the general plan of development served as a substitute for constructive notice, when they purchased their property.

I first look to the recorded documents, such as the Declaration, the Plan and the deeds, for evidence of the grantors' intent regarding the covenants.  The "whereas" section of the Declaration addresses the Developers' intention to acquire the remaining lots on the Plan and their desire to subject all of Newell's

---

sale, pursuant to which the complainant's lot was sold, is ordinarily, a question of fact, to be determined from the circumstances.")

[35] *Greylag*, 2004 WL 2694905, at \*6 (citing *Weiner*, 623 A.2d at 1089).

[36] *Jackson*, 27 A.2d at 859. *See also Capano*, 2019 WL 3938704, at \*10 ("The doctrine of implied covenants applies in limited circumstances 'to enforce the express scope of a written restriction which has been unintentionally omitted from one of several similarly-situated deeds.'") (citation omitted).

Creek to the covenants in the Declaration. The Plan, which was recorded prior to the Declaration, lays out all of the numbered lots in the Newell's Creek development, including the Wygants' property, but offers no evidence that the lots will be bound by future covenants. Article VIII of the Declaration provides that it binds all lots owned by Developers at the time the Declaration was recorded, and all other lots in Newell's Creek "as to which the owners thereof have joined by separate writing."[37] Article VI states that the Developers expressly agree to amend the Declaration to subject the remaining lots on the Plan to the Declaration, so long as one of the Developers signs an amendment indicating their consent to the amendment.[38]

The Declaration specifically names the lots in Phase 1 of the development, making the covenants enforceable against those lots. But the Wygants' property was not included, since it was developed in Phase 2 of the development. The precatory "whereas" language evidences the desire that all Newell's Creek lots be bound by the Declaration. However, that language must be read in conjunction with Articles VI and VIII, which require that a pre-condition occur – that there be a separate writing evidencing consent for additional properties to be bound – before other lots in Newell's Creek become subject to the Declaration.

---

[37] D.I. 18, Ex. 5, Art. VIII.

[38] *Id.*, Art. VI.

Next, I consider whether there is language in the Wygants' deed, or in other deeds, that would show they had constructive notice that their property would be subject to the Declaration. The Wygants' deed provides that the property was conveyed subject to restrictions, setbacks, easements and conditions on the Plan, as well as to the restrictive covenants in the Stormwater Management Maintenance Declaration for Camden Town Center and Newell's Creek ("Stormwater Declaration.").[39] The Wygants' deed, however, does not show that the property was transferred subject to the covenants in the Declaration.

And, none of the prior deeds in the chain of title, such as the deed between the original property owners and Newell's Creek Developer, which was recorded on March 14, 2005, and the deed between Newell's Creek Developer and Ryland Group, which was recorded on November 1, 2005, shows that the land where the Wygants' lot was later developed was being conveyed subject to the Declaration.[40] The parties agree there is no separate writing joining the lots in Phases 2 and 3 of

---

[39] D.I. 18, Ex. 2. The Stormwater Declaration provides that all owners of lots on the Plan are obligated to pay annual assessments levied by the corporation organized to maintain and pay for maintenance of the stormwater infrastructure and pond located in Newell's Creek. D.I. 22, Ex. D. Assessments under the Stormwater Declaration would apply to the Wygants. The record is unclear whether there is any relationship between the assessments levied by the Association and the assessments for stormwater maintenance authorized under the Stormwater Declaration.

[40] D.I. 18, Ex. 6; D.I. 25, Ex. 28.

the development to the Declaration, although the record does not contain any other deeds conveying Newell's Creek property for the Court to consider.[41]

Common plans for developments can be created in several ways, including where covenants are inserted in all (or many) of the deeds in the common development; or, if property is sold based upon representations to individual purchasers that covenants similar to the ones in their deeds will be inserted in the seller's deeds to others; or, where the seller's course of conduct indicates a common plan and leads purchasers to assume the plan will be followed by all owners.[42] Establishing the existence of a common plan is a fact-intensive inquiry. The Association appears to rely primarily on the Plan to show the existence of a common plan making the Declaration enforceable against the Wygants. Other recorded documents, however, do not justify such a conclusion, without additional evidence. And, there was some evidence presented on the Wygants' knowledge of the Plan at the time they purchased their property, but there is a material factual dispute whether the Wygants understood the property to be bound by covenants at that time.[43] There are additional disputed issues concerning whether some

---

[41] D.I. 18, ¶ 5.

[42] *See Jackson v. Richards*, 27 A.2d 857, 860 (1942).

[43] *See* D.I. 18, ¶ 8; D.I. 22, ¶ 7.

properties in Newells' Creek are subject to different covenants,[44] the effect of the Wygants' prior payments of annual assessments, and whether Tami Wygant served as a member of the Association's board of directors. Accordingly, because of the fact-intensive nature of the inquiry to determine whether the common plan doctrine should apply in this case, I find it necessary to inquire more thoroughly into the facts to clarify the application of law to the circumstances, and recommend that the Court deny the Association's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court deny the Association's motion for summary judgment because a more developed record is needed and material questions of fact exist. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

---

[44] The Wygants allege that Newell's Creek includes a townhouse development that is not under the auspices of the Association. D.I. 22, ¶ 8. The Association responds that the association governing the townhomes "has since merged with [the Association] thereby bringing the townhomes under the auspices of the [Association]." D.I. 23, ¶ 5. The question remains whether certain properties – as exemplified by the townhomes – were bound by different covenants than those in the Declaration, which could affect whether there was the intent to create a common plan.