**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 30, 2022

Thomas C. Marconi, Esquire
MacElree Harvey, Ltd.
724 Yorklyn Road, Suite 100
Hockessin, DE 19707

Richard C. Abbott, Esquire
Abbott Law Firm, LLC
724 Yorklyn Road, Suite 240
Hockessin, DE 19707

RE: ***Civic Association of Surrey Park v. Robert Riegel & Erin Riegel***,
Civil Action No. 2019-0961-SEM

Dear Counsel:

In this deed restriction action brought under 10 *Del. C.* § 348, I write to address the exceptions to the Master in Chancery's final report taken by both Petitioner Civic Association of Surrey Park ("CASP") and Respondents Robert Riegel and Erin Riegel. For the reasons that follow, I conclude CASP does not have standing to enforce the deed restrictions at issue in this matter. This matter is dismissed for lack of subject matter jurisdiction.

## I. BACKGROUND[1]

Crompton Development Corporation (the "Corporation") developed the New Castle County residential neighborhood of Surrey Park in the 1960s. The Corporation recorded a declaration of restrictions for Surrey Park on June 19, 1964 (the "Declaration").[2] The Declaration provides restrictions on the use of land, and provides that plans for any building "shall have been submitted to and approved in writing by the within mentioned grantors or their designees," and "said grantors shall have the right to refuse to approve any such plan."[3] The Corporation is the grantor.[4] The Declaration also states the grantors can assign their rights and powers thereunder

---

[1] CASP's trial exhibits are cited as "PX __." The Riegels' trial exhibits are cited as "RX __."

[2] *See* PX 1.

[3] *Id.* at 1.

[4] *See id.*

by an appropriate instrument in writing.[5] The Corporation was dissolved on January 12, 1971.[6] At that time, the Corporation's only stockholders were Pierce K. Crompton, Jr. and Letitia M. Crompton.

Plaintiff CASP was incorporated in 1968.[7] In October 1974, CASP's outgoing president wrote a memorandum to its incoming president detailing the state of CASP's documentation and practices.[8] He wrote, "Presently, in my judgment, there are no deed restrictions that are enforceable by [CASP] for formal transfer of that responsibility has not been passed from Crompton to [CASP]."[9] He reiterated this shortcoming in explaining CASP's ability to address fencing violations: "we do not have the power to enforce the [fencing guidelines] but can only make recommendations to Crompton at least at this juncture (until we get the enforcement powers)."[10]

On July 9, 1975, the Corporation and the Cromptons, in their capacity as Corporation stockholders, entered into an "Assignment of Rights, Powers, Titles, Estates, Duties and Obligations Under Restrictions Covering Surrey Park" (the "Assignment").[11] The Assignment recites that the Corporation held certain rights and powers under the Declaration, and that the Corporation had been dissolved. It states that upon the dissolution of the Corporation, all its rights and powers transferred to the Cromptons, including those conferred by the Declaration. The Assignment then purported to transfer those same rights from the Cromptons to CASP.

An October 20, 1975, letter from CASP's former president to its incoming president explained the purpose of the Assignment:

There was a significant delay in effectuating the transfer of the deed restrictions to [CASP] which was caused by Crompton dissolving his

---

[5] *Id.* at 3.

[6] RX 9.

[7] RX 35 (providing January 23, 1968 as "DATE OF INC.").

[8] RX 36; *see* RX 35 (identifying the president with a term ending in October 1974).

[9] RX 36 at 1.

[10] *Id.* at 3.

[11] PX 2.

corporation prior to the transfer of those restrictions. Although a corporation has a certain period of time after dissolution with which to wind up its affairs, that time had already run out. Accordingly it was felt that with the corporation being dissolved, the powers of the corporation flowed to its shareholders who were Pierce Crompton and his wife. We therefore prepared an instrument whereby Crompton and wife transferred their interest in the restrictions to [CASP]. Although it is true that at some future time, an attack might be made on [CASP's] power to enforce the restrictions because of the hiatus in time, we believe that it has been cured to the extent possible under the existing law.[12]

That "future time" is now. In 2019, CASP sued the Riegels under 10 *Del. C.* § 348, alleging they built a shed without CASP approval and in violation of Surrey Park's deed restrictions. The Riegels asserted many defenses, including that CASP lacks standing to bring this suit because it was never assigned the enforcement rights and powers under the Declaration.

The Riegels moved to dismiss on January 20, 2020, on the grounds that CASP lacked standing, among others.[13] The presiding Master in Chancery denied that motion, finding it reasonably conceivable that the Cromptons were vested with the Corporation's rights to enforce the Declaration and then assigned those rights to CASP.[14] The Riegels then answered the petition and asserted as an affirmative defense that CASP lacked standing.[15]

On January 21, 2021, CASP filed a "Motion Pursuant to 8 *Del. C.* § 279 for the Appointment of a Receiver for the Former Crompton Development Company."[16] CASP recognized the potential break in the chain of transfer of the Corporation's

---

[12] D.I. 45, Ex. A, at 1.

[13] D.I. 7.

[14] D.I. 21 (draft report, to which no exceptions were taken); D.I. 22 (final report); D.I. 24 (order confirming the final report).

[15] D.I. 25 ¶ 22.

[16] D.I. 35.

rights and powers from the Corporation to the Cromptons to CASP.[17] Accordingly, CASP sought the appointment of a receiver for the dissolved Corporation to "execut[e] and record[] a formal assignment by the Corporation to CASP of the right to enforce the Declaration" effective July 9, 1975.[18] In a final report, the Master in Chancery concluded the right to enforce the deed restrictions was property of the dissolved Corporation that could justify appointment of a receiver under Section 279.[19] But she sought further proceedings to determine whether, as a factual matter, the right to enforce the restrictions passed to the Cromptons.[20] The final report recommended against appointing a receiver at that time, and stayed exceptions until after trial.

After trial, the Master in Chancery issued a draft report that concluded CASP had standing to enforce the Declaration's restrictions.[21] The Reigels took exception, and the Master in Chancery's final report concluded CASP did not have standing.[22] Anticipating more exceptions, the Master in Chancery put in the extra effort of explaining her conclusions that the dispute was ripe, acquiescence by CASP had not been established, and the Declaration's restrictions were unenforceable and were arbitrarily applied.[23]

As the Master in Chancery predicted, both CASP and the Riegels took exception to the post-trial final report and the final report recommending against appointing a receiver.[24] The matter was assigned to me for purposes of hearing the exceptions, which the parties briefed.

---

[17] *See id.* ¶ 9 ("If there was no valid assignment, it is because the right was not vested in Mr. and Mrs. Crompton at the time the Assignment was recorded.").

[18] *Id.* at 5–6.

[19] D.I. 48 at 3–4; *Civic Ass'n of Surrey Park v. Riegel*, 2021 WL 4059971, at *1–2 (Del. Ch. June 2, 2021).

[20] *Id.*

[21] D.I. 75.

[22] D.I. 91 at 20–23; *Civic Ass'n of Surrey Park v. Riegel*, 2022 WL 1597452, at *9–10 (Del. Ch. May 19, 2022).

[23] D.I. 91.

[24] D.I. 93; D.I. 94; D.I. 95.

## II.    ANALYSIS

Among other points, CASP took exception to the Master in Chancery's conclusion that it lacked standing. "Standing is a threshold question, and . . . is jurisdictional in nature."[25]  I therefore address that exception first.  I am bound to conduct a de novo review as to both the facts and the law.[26]

I agree with the Master in Chancery that CASP lacks standing to assert rights and authority under the Declaration because the Corporation did not transfer those rights.  For CASP to obtain standing to assert rights and authority under the Declaration, a receiver must be appointed over the Corporation to transfer those rights to CASP.  But CASP cannot seek appointment of that receiver in the context of an action it lacked standing to bring in the first place.

CASP argues that the enforcement right was automatically assigned to the Cromptons—the Corporation's sole stockholders—upon the Corporation's dissolution in 1971.  The linchpin of its argument is its reading of 8 *Del. C.* § 281(b) to effectuate the automatic transfer or assignment of certain property and rights from a dissolved corporation to its stockholders.  Specifically, CASP relies on the text of that Section that presently reads, "Any remaining assets shall be distributed to the stockholders of the dissolved corporation."[27]  CASP contends this language caused the automatic transfer of the Corporation's enforcement right to the Cromptons, as reflected in the Assignment.

This argument fails.  The language in Section 281 that CASP relies on was adopted in 1987.[28]  When the Corporation dissolved in 1971, Section 281 charged trustees or receivers of a dissolved corporation as follows:  "If there shall be any balance remaining after the payment of the debts and necessary expenses, they shall distribute and pay the same to and among those who shall be justly entitled thereto,

---

[25] *Thornfton v. Bernard Techs., Inc.*, 2009 WL 426179, at *4 (Del. Ch. Feb. 20, 2009).

[26] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[27] 8 *Del. C.* § 281(b).

[28] *In re Altaba, Inc.*, 2021 WL 4705176, at *12 (Del. Ch. Oct. 8, 2021) (stating that the General Assembly adopted Sections 280, 281, and 281 in 1987); Robert S. Saunders, et al., *Folk on the Delaware General Corporation Law* § 282, cmt. 282.01 ("Section 282 . . . was added in 1987 . . . ."). *Compare* 8 *Del. C.* § 281(b) (1974), *with* 8 *Del. C.* § 281(b) (1987).

as having been stockholders of the corporation or their legal representatives."[29]  The language on which CASP relies appeared nowhere in that statute.  The only other authority CASP relies on is *In re Altaba, Inc.*,[30] but because that case applies the modern version of Section 281(b), it is inapposite.

Section 278 governed the Corporation's dissolution, with relevant portions that have not been substantively altered since 1971.  For purposes of CASP's exceptions, I need only determine whether Section 278 provides for the automatic distribution of a corporation's property or assets to its stockholders.  I conclude it does not.

The applicable version of Section 278 reads as follows:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued for the term of 3 years from such expiration or dissolution . . . for the purpose of prosecuting and defining suits . . . and of enabling them gradually to settle and close their business, **to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets**, but not or the purpose of continuing the business for which the corporation was organized.[31]

This language enumerates what a corporation may do during the three years following dissolution (e.g., prosecute and defend suits, dispose of and convey property, discharge liabilities, and distribute assets), and what it may not do (e.g., continue the corporation's business).  As to the distribution of assets, the statute contemplates, but does not require, some affirmative action by the corporation:

---

[29] 8 *Del. C.* § 281 (1974).  That version of Section 281 is inapplicable to this case, where no trustee or receiver was ever appointed.

[30] 2021 WL 4705176 (Del. Ch. Oct. 8, 2021).

[31] 8 *Del. C.* § 278 (1974) (emphasis added).

"dispos[ing] of and convey[ing]" its property.[32]  If no such action is taken, the corporation continues to hold those assets even after it is dissolved.[33]

Because Section 281(b) as drafted when the Corporation dissolved did not contain the language CASP relies on, and because Section 278 did not and does not contemplate that a dissolved corporation automatically distributes its assets, I conclude the Corporation's enforcement rights were not automatically distributed to its stockholders upon its dissolution in 1971. The Corporation dissolved while holding the right and power to enforce the Declaration's restrictions.

As the Master in Chancery found, there is no evidence that the Corporation actually distributed its enforcement rights to its stockholders.  The Assignment's recital was not effective to secure the Corporation's property in order to assign it to CASP.[34]  The fact that the Riegels and other Surrey Park residents have yielded to CASP's enforcement of Surrey Park's restrictions does not change the fact that the collective enforcement right remained with the Corporation.[35]

---

[32] *Id.*; *Distribute*, Black's Law Dictionary (5th ed. 1979) ("To deal or divide out in proportion or in shares."); *Convey*, Black's Law Dictionary (5th ed. 1979) ("To transfer or deliver to another.  To pass or transmit the title of property from one to another.  To transfer property or the title to property by deed, bill of sale, or instrument under seal.  Used popularly in sense of 'assign', 'sale', or 'transfer'.").

[33] *See In re Krafft-Murphy Co.*, 82 A.3d 696, 704 (Del. Ch. 2013) ("After § 278's three year period expires, § 279 empowers the Court of Chancery to oversee and facilitate (by appointing a trustee or receiver) the completion of the dissolved corporations unfinished business," including by "tak[ing] charge of the corporation's property." (quoting 8 *Del. C.* § 279)).

[34] *Llamas v. Titus*, 2019 WL 2505374, at *16 (Del. Ch. June 18, 2019) (collecting cases) ("Generally, recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument." (internal quotation marks omitted) (quoting *New Castle Cnty. v. Crescenzo*, 1985 WL 21130, at *3 (Del. Ch. Feb. 11, 1985))).

[35] *See Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998)) (reasoning acquiescence of a complained-of act requires "full knowledge" of the material facts); *see also* PX 14; D.I. 69 at 29–30.

Those rights under the Declaration remain with the Corporation, and await a receiver to transfer them. The Delaware Supreme Court has explained that, in some instances, contractual rights can constitute "property" of a dissolved corporation under 8 *Del. C.* § 279: even "contingent contractual rights, such as unexhausted insurance policies, constitute 'property' of a dissolved corporation, so long as those rights are capable of vesting."[36] In addition, our Supreme Court has held that an interest in land constitutes "property" for purposes of Section 279 sufficient to constitute the "unfinished business of the corporation."[37] The deed restrictions enforceable by the Corporation encumber and run with every parcel in Surrey Park, grant the Corporation the right to enter upon each parcel and remove at the owner's expense anything thereon that is contrary to the deed restrictions, and reserve easements and rights-of-way on each lot.[38]

But the fact that the Corporation's rights to enforce the Declaration have remained with the dissolved Corporation does not mean the Riegels were not subject to that Declaration. The Riegels, like every other landowner in Surrey Park, took title to their property subject to Surrey Park's deed restrictions regardless of whether any entity held the power to enforce them.[39] Those restrictions bind the use of land in addition to requiring the approval of plans.[40] CASP is correct that deed restrictions "are reciprocal covenants that run with property."[41] Delaware law provides that landowners in a commonly restricted subdivision like Surrey Park accept the deed restrictions when they take their deed, and reciprocally hold the right

---

[36] *Krafft-Murphy*, 82 A.3d at 698; *see also In re Tex. E. Overseas, Inc.*, 2009 WL 4270799, at *4–5 (Del. Ch. Nov. 30, 2009) (treating insurance policies as property for purposes of Section 279).

[37] *Addy v. Short*, 89 A.2d 136, 140 (Del. Ch. 1952) (reasoning that the possibility of reverter constituted "an interest of some sort in land" and therefore "unfinished business" for purposes of Section 279).

[38] PX 1 at 1–3.

[39] *See* PX 1.

[40] *Id.* at 1.

[41] *Council of Ass'n of Unit Owners of Pelican Cove Condo. v. Yielding*, 2019 WL 2339531, at *5 (Del. Ch. June 3, 2019); PX 1.

to enforce those restrictions against another landowner.[42]  A temporary absence of a formal community enforcement body does not relieve landowners of their reciprocal deed restrictions.[43]

I agree with the Master in Chancery that CASP does not and has not held the right or power to enforce the restrictions in the Declaration.  From this conclusion, the logical next consideration is CASP's request on exception to appoint a receiver over the Corporation to transfer its enforcement right to CASP, thereby curing its lack of standing.  But CASP's request comes in an action it never had standing to bring in the first place.[44]  I conclude CASP cannot continue to prosecute this action, even to cure its lack of standing.  Because of its lack of standing to bring this action, CASP must seek a receiver for the dissolved Corporation in a separate action.

## III.   CONCLUSION

I conclude the Corporation dissolved still holding the power to enforce the Declaration.  The Corporation's stockholders could not distribute those enforcement rights to themselves by reciting they had done so in a recital clause of a different instrument.  CASP did not have standing to pursue this action to enforce the

---

[42] *Brandywine Hills Cmty. Ass'n v. T. Bruth Wilmonth Const. Co.*, 1995 WL 767336, at *7–8 (Del. Ch. Dec. 21, 1995) (citing *Leon N. Weiner & Assocs. v. Krapf*, 623 A.2d 1085, 1089 (Del. 1993); *Welshire, Inc. v. Harbison*, 88 A.2d 121, 123 (Del. Ch. 1952)).

[43] *Id.* at *8 ("To remove a restrictive covenant or the right to enforce any or all of them, all landowners to whom the restrictive covenants apply must elect to do so. To remove a restrictive covenant by approval of less than unanimity, all parties who share the restrictive covenant in question must contract, before attempting to remove that covenant from the deed, to modify by less than a unanimous vote.").  *But see O'Marrow v. Roles*, 2015 WL 5714847, at *9 (Del. Ch. Sept. 30, 2015) ("Aside from the fact that there currently exists no Board of Governors, this covenant contains no specific method or procedure for obtaining approval from the Board of Governors.").

[44] *See Schoon v. Smith*, 953 A.2d 196, 200 (Del. 2008) ("Standing is the requisite interest that must exist in the outcome of the litigation at the time the action is commenced." (internal quotation marks omitted) (quoting *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 823 (Del. 1997))).

Declaration.  CASP presently lacks standing to enforce the Declaration against the Riegels' shed.   This matter is **DISMISSED**.[45]

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[45] *See Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) ("Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers.").